31 P.(2d) 988

## JAFFA v. LOPEZ et al.
### No. 3870.

Supreme Court of New Mexico.

Jan. 9, 1934.

On Rehearing April 2, 1934.

Brice & Sanchez, of Santa Fé, for appellant.

Gilbert & Hamilton, of Santa Fé, for appellee Jaffa.

Reed Holloman, of Santa Fé, for appellees Lopez.

WATSON, Chief Justice.

In June, 1926, the property here in question, owned by Sofia Q. Lopez, was under first mortgage of $3,500 to the Mutual Building & Loan Association of Santa Fé, and under second mortgage of $8,400 to Nathan Jaffa, then receiver of the Santa Fé Bank, and now trustee for its stockholders and creditors. At that time Union Savings & Loan Association, a Wyoming corporation, though it had not qualified according to the statute to do business in this state as a foreign corporation, was actually engaged herein in the savings and loan business; one Byron O. Beall being its Santa Fé agent and representative.

After some negotiations with said Beall looking to readjustment of her loans, Mrs. Lo-

pez agreed with Jaffa that, if the negotiations were successful and the latter would reduce his debt to $4,750, she would, from the proceeds of the new loan, pay off the Mutual Building & Loan Association mortgage and pay Jaffa $2,600 in cash; the latter to have a mortgage for the balance of the reduced debt in the sum of $2,150, to be second to the mortgage securing the new loan.

The negotiations were successful, and in execution thereof Mrs. Lopez purchased of the savings and loan association three of its 8 per cent. savings certificates of the respective maturity values of $3,500, $2,500, and $4,000. She also executed and delivered to the savings and loan association her two notes in the sums of $3,500 and $2,500, bearing annual interest of 10 per cent. and annual premium of 2 per cent., payable monthly, and secured by mortgages on the property. The savings certificates stood also as security for the loan. In closing the loan, a $25 attorney's fee and a $15 appraisal fee were deducted as expense on each of the two mortgages. The attorney's fee was paid out as expense. The appraisal fee was not, as the appraisal was made by a salaried officer or employee of the savings and loan association. Beall also exacted from Mrs. Lopez a charge of $120 for procuring the loan; this without authority from or knowledge of the savings and loan association, but in the knowledge that he would not be otherwise compensated.

In December, 1926, having determined to modify its interest rate on loans in New Mexico, the savings and loan association prepared and sent to Beall supplemental contracts to be executed by Mrs. Lopez, waiving the 2 per cent. annual premium and adjusting the monthly payments accordingly. Beall thereupon, without the authority or knowledge of the savings and loan association, undertook for a further cash payment to him of $191, to obtain for Mrs. Lopez this reduction of interest. She paid the sum and signed the supplemental contracts.

While these supplemental contracts adjusted the monthly payments to a 10 per cent. basis, they did not affect payments previously made, and it was not until after the commencement of this litigation that credits were made covering the earlier payments.

After making thirty-one monthly payments on the $2,500 certificate and twenty-seven monthly payments on the $3,500 certificate, these certificates were surrendered by Mrs. Lopez and the surrender value thereof applied upon the indebtedness.

Such, in summary, are the facts here deemed material, as found by the trial court.

This suit was commenced by Jaffa against Mrs. Lopez and her husband, Juan B. C. Lopez, for the foreclosure of his mortgage. The Union Savings & Loan Association was named as a defendant holding a prior mortgage of record. As to it, Jaffa alleged that its mortgage was of no force or validity as a prior incumbrance for two reasons: First, as the result of its unlawfully engaging in

business in this state; and, second, because usurious, resulting in statutory penalties, which, applied against the debt, would entirely cancel it. He prayed in the usual form as against Mrs. Lopez and husband. As against Union Savings & Loan Association he prayed that its mortgages be held void; or, if not held void, that they be held usurious and that the statutory penalties be credited against the debt, and that the debt and securities be adjudged discharged and satisfied of record; or that, if not completely satisfied thus, the association be required to apply any collateral it might have upon the debt before resorting to the real estate. ·

After unsuccessfully demurring to the complaint, the savings and loan association answered it, first by way of admission and denial; and, second, by way of new matter, setting up plaintiff's agreement that his lien should be second and the payment made to him out of the proceeds of the loan as estopping him from claiming priority. Plaintiff replied.

Mrs. Lopez and husband filed an answer and cross-complaint. The answer admitted the allegations of the complaint. The cross-complaint named the Union Savings & Loan Association as defendant, set up substantially the same facts as set up in the complaint, and prayed judgment decreeing their indebtedness to the association to be fully paid and satisfied by payments made plus statutory penalties for usury and prayed money judgment for any excess.

The Union Savings & Loan Association answered this cross-complaint, first, by way of admission and denial, and then "by way of new matter," concluding with a prayer that the cross-complainants take nothing. Then, under the head "affirmative relief," the answer proceeded with allegations upon which it prayed for foreclosure of its mortgage and sale of the property.

Mrs. Lopez and husband replied to this pleading as an answer and answered it as a cross-complaint; in the answering part of the pleading adopting all of the allegations of their own cross-complaint and renewing its prayer.

Upon these pleadings and found facts the trial court adjudged complete satisfaction of the Union Savings & Loan Association mortgages, and a recovery by Mrs. Lopez and her husband of the sum of $3,204.87 as being the amount by which payments and statutory penalties for usury exceeded the amount of the debt. Plaintiff was adjudged a foreclosure of his mortgage as a first lien and a sale of the premises. Union Savings & Loan Association has appealed.

Appellant, in one of its briefs, says:

"The calculations by which the judgment was arrived at against the defendant association in favor of defendants Lopez are as follows:

Lopez was due defendant association on two notes, cash actually received ...................... $6,000.00
(Finding No. 27, Rec. pps. 117–8)

Credits

| | |
|---|---:|
| Cash paid on principal of $3,500 note | $1,571.49 |
| Cash paid on $2,500 note | 991.68 |
| Double interest paid ($1,782.36) on $3,500 note | 3,564.72 |
| Double interest paid ($1,328.25) on $2,500 note | 2,656.50 |
| Amounts paid Lopez | 311.00 |
| Accrued unpaid interest on the $3,500 note | 61.76 |
| Accrued unpaid interest on the $2,500 note | 47.82 |
| Total credits | $9,204.97 |
| Less face of notes | 6,000.00 |

Judgment for defendants Lopez ............... $3,204.97"

The first four points relied on for reversal are stated thus:

"Point I. Under the New Mexico statutes, usury is a defense to an action upon the usurious instrument, and the cross bill of defendants Lopez sets up no cause of action against the defendant association; nor is there any evidence authorizing any decree against it, and the decree herein is without authority of law, and should be reversed.

"Point II. The statutory remedy for usury, being inclusive, and personal to the borrower, the plaintiff had no cause of action against the defendant association, and could not plead usury for the purpose of establishing his inferior mortgage as a superior mortgage.

"Point III. Both the plaintiff's action, and the cross action of the defendants Lopez, were suits in equity, and could not be maintained without first tendering to the defendant association the principal due it, together with legal interest.

"Point IV. The plaintiff, by his acts, having caused the defendant association to make this loan, and he agreeing to take an inferior mortgage, and accepting the sum of $2181.87 of the association's money represented by the Lopez' notes, he is estopped to maintain this suit, and could not under any circumstances maintain it without returning the money paid to him out of the proceeds of said loans."

Further than necessary to a disposition of this case, we have no desire to pursue the numerous abstract propositions of law brought to our attention and elaborately discussed. How would these points, if sustained, affect the judgment?

The judgment affords relief of three kinds. It cancels appellant's prior liens. This is primarily a matter between appellant and appellees Lopez, though appellee Jaffa has a beneficial, if not a legal, interest. There is a money recovery in favor of appellees Lopez as against appellant. In this appellee Jaffa has no interest. The mortgage of appellee Jaffa is foreclosed as against appellees Lopez. Of this the latter do not complain, and by it, independently of the other relief, appellant is not injured or prejudiced.

As we have here a single judgment, embracing different forms of relief, of varying interest to the parties, we have back of it a single suit, embracing different issues, as to which the parties bear different relations,

with varying rights and interests. The complaint and the two cross-complaints, with the answers and replies, are the pleadings in a single litigation. Young v. Vail, 29 N. M. 324 at page 344, 222 P. 912, 34 A. L. R. 980.

Under that view, if it be true, as we need not and do not decide, that appellee Jaffa has sought relief to which he was not entitled in his own right, or which his conduct estopped him from claiming, it will not affect the present judgment if such relief was properly granted at the behest of appellees Lopez. If, by reason of usurious exactions, the latter are entitled to penalties, which, credited upon their debt, have the effect to satisfy it in toto, with its security, nothing can prevent appellee Jaffa from reaping the benefit of it. So, leaving him out of the case for the present, what objections are there to the relief afforded appellees Lopez?

■ Appellant's first proposition is that the usury statute (1929 Comp. St. §§ 89-109, 89-110) is not a sword, but a shield. It complains that the cross-bill of appellees Lopez therefore states no cause of action. That we may admit arguendo, without effect upon the judgment. We may assume that this point was all that was needed to protect appellant against the Lopez cross-complaint. But protection was not all it desired. It seized the opportunity to put forth demands of its own. It filed a pleading in which it brought its notes and mortgages into court and demanded the relief of foreclosure and sale. Under appellant's own theories, appellees Lopez, thus put on the defensive, were in a position to interpose the shield of the usury statute. Did they do so?

■ The contention that they did not is based principally upon the fact that in replying to appellant's cross-complaint they did not reiterate the allegations of their own cross-complaint, merely incorporating them by reference and praying "for a judgment as requested in their cross complaint." The objection is one of form only. If not good pleading, it accords with common practice and follows the lead of appellant, who, in that section of its "answer" entitled "affirmative relief," adopts the allegations of paragraphs 1 to 9, inclusive, of the answer by way of new matter. We cannot doubt that the parties understood that an issue of usury arose upon this "answer" claiming the affirmative relief of foreclosure, and the reply thereto. It would be an abuse of power and a violation of precedent to reverse this judgment on a question of pleading which, if having any merit, is so technical. The pleadings should be perfected in the district court, not here.

Nor are we impressed by appellant's claim that the frame of the findings and judgment indicates that the trial judge considered that the issue of usury arose on other pleadings than those last referred to. The essential thing is that the findings were proper under some issue between some of the parties.

So we overrule appellant's first four points, not as abstract propositions, but as unavailing, for one reason or another, in this case.

296

The claim that the statute of usury is a shield, not a sword, might be broad enough to support a contention that it spends its force in defeating all recovery by the usurer, and does not justify judgment over for the excess. But, while appellant refers complainingly to the fact, it nowhere seems to urge as independent error the judgment over for appellees Lopez after cancellation of their debt. We mention the matter therefore merely to say that we do not decide it.

Appellant contends that the original contract was purged of usury by the transaction of December, 1926. Several objections are made to this view. Since one of them appears to be fatal, the others need not be discussed. The new arrangement was not made retroactive. The usurious interest payments already made were allowed to stand. Only after commencement of this litigation was any notice taken of it. Then, it is true, appellant entered credits representing them. This avails nothing. It was not a new and purging agreement. It was a unilateral act by appellant, and does not come within the principal or authority on which appellant places main reliance. Hawkeye Benefit & Loan Ass'n v. Blackburn, 48 Iowa, 385.

Appellant contends that "there is no authority of law for the recovery of the items of $120 and $191 wrongfully taken from them by Byron O. Beall," citing Vaughan v. People's Mtg. Co., 130 Cal. App. 632, 20 P.(2d) 335. In this point appellee Jaffa disclaims interest. Appellees Lopez fail to mention it. We consider the latter, by the failure, to have confessed error to this extent.

Appellant contends that "the payment of reasonable expenses incident to a loan, such as attorney fees for examining title, recording fees, appraisement fees, etc., are not interest." As the case now stands, this abstract proposition could have no bearing except as to the charges for attorney's and appraiser's fees, the latter of which, though retained, were not paid out. But, if appellant's computation above set forth is correct, these items are not included in the recovery, and so do not affect the judgment.

For the erroneous inclusion of $311 in the money judgment for appellees Lopez as against appellant, the judgment should be reversed. Costs of the appeal should be taxed against appellees Lopez, and should be deducted, with said sum of $311, from the sum of $3,204.87 originally awarded them. Under Benderach v. Grujicich, 30 N. M. 331, 233 P. 520, the money recovery should go against appellant and its supersedeas surety. The cause will be remanded for modification of the original judgment in accordance with these directions. It is so ordered.

On Rehearing.

We come now to decide what we might perhaps better have decided before, whether the statutory penalties for usury spend their force in defeating recovery by the usurer on his contract, or whether, when they exceed the sum payable according to the contract, they will support judgment over for the borrower. The single object of appellant now is to avoid the money judgment recovered by appellees Lopez.

Though the particular question was not raised below or in the original briefs and arguments here, we deem it our duty to consider it, under the doctrine of State v. Garcia, 19 N. M. 414, loc. cit. 421, 143 P. 1012, as subsequently developed and applied in Schaefer v. Whitson, 32 N. M. 481, 259 P. 618. If there is error, it is fundamental. There can be no possible theory of recovery over except that the statute permits it.

The statute in question provides: "If a greater rate of interest than is hereinbefore, in section 1 (89-109) allowed, shall be contracted for or received or reserved, the contract shall not therefore be void; but in any action on such contract, proof may be made that a greater rate of interest has been directly or indirectly contracted for or taken or reserved, and the plaintiff shall recover only the principal less the amount of interest accruing thereon at the rate contracted for, and the defendant shall recover costs; and if interest shall have been paid, judgment shall be for the principal less twice the amount of interest paid and less the amount of all accrued and unpaid interest." Laws 1919, c. 162, § 2; 1929 Comp. St. § 89-110.

The amendment of 1933 (chapter 142) does not affect this case.

This controlling section seems to contemplate mere recoupment. The only recovery provided for is by the lender. It is to be in the amount of the principal debt, less the penalties.

Lines are sharply drawn between counsel as to whether a statute imposing penalties for usury is exclusive of a common-law remedy or civil action to recover unlawful interest paid. Appellant relies on Blain v. Willson, 32 Neb. 302, 49 N. W. 224, and a claimed weight of authority. Appellees Lopez rely on Lee v. Hillman, 74 Wash. 408, 133 P. 583, L. R. A. 1918B, 581, Ann. Cas. 1915A, 759. They contend that the latter is controlling upon us, as interpreting a Washington statute a few years later adopted in this state. It appears not improbable that such is the origin of our statute, and we are disposed to admit the contention, though not deciding it.

But we do not see how Lee v. Hillman affects this case. True, it was there held that the statute was not the exclusive remedy for one who had been mulcted in usury. An independent and original action was allowed for the recovery of property surrendered in payment of usurious interest. But it was left an open question whether more than the excess over lawful interest could be recovered, and it does not seem even to have been claimed that anything more than the interest itself could be recovered. In a later case in the same court it is held that this right of recovery extends only to the excess over lawful interest. Trautman v. Spokane Security Finance Corporation, 163 Wash. 585, 1 P.(2d) 867.

It is plain that this Washington doctrine does not help appellees Lopez to sustain their money judgment. If it be conceded that by an independent action they might have recovered from appellant the comparatively insignificant sum representing what they had paid in excess of the lawful rate, that would have still left them largely in appellant's

298

debt. As before remarked, the present recovery can stand only upon the statute. We are satisfied that the statutory penalties are only available defensively and by way of recoupment.

It being necessary to make new disposition of this appeal, our former judgment will be vacated. The case permits of no money recovery for appellees Lopez except for costs. The judgment must be reversed, and the cause will be remanded for modication of the judgment to accord herewith. However, appellant will not recover costs in this court. It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.