115 P.2d 84

**FLINT v. KIMBROUGH.**

No. 4611.

Supreme Court of New Mexico.

June 9, 1941.

Rehearing Denied July 21, 1941.

Whatley, Garland & Weir, of Las Cruces, for appellant.

Mechem & Mechem, of Las Cruces, for appellee.

BICKLEY, Justice.

Appellant sued appellee to recover treble the amount of interest she paid to appellee on a promissory note, alleging that the interest she was required to pay was usurious under the provisions of § 89-110, N.M.S.A. 1929 Comp., as amended by Chap. 142, Laws of 1933, which are as follows:

"If a greater rate of interest than is hereinbefore, in Section 1 (89-109) allowed, shall be contracted for or received or reserved, the contract shall not therefor be void; but in any action on the contract proof may be made that a greater rate of interest has been directly or indirectly contracted for or taken or reserved, and the plaintiff shall recover only the principal less the amount of interest accruing thereon at the rate contracted for, and the defendant shall recover costs; and if interest shall have been paid, judgment shall be for the principal less twice the amount of interest paid and less the amount of all accrued and unpaid interest; *and if the contract shall have been performed by the borrower, the person, persons or corporation who shall have received the interest shall forfeit to the borrower from whom the interest was collected, or to his heirs, executor, administrator or assigns; treble the amount of interest so collected in any cause of action brought for the recovery of the same within three years after such cause of action accrued.*"

The italicized portions represent the 1933 amendment.

Appellee filed her answer in bar, setting up as a defense the judgment in foreclosure she had recovered against appellant on a real estate mortgage which appellant had executed simultaneously with the promissory note to secure the payment of said note. Appellant moved for judgment on the pleadings, which was denied. Appellant then replied and later appellee filed her motion for judgment on the pleadings, which the court sustained and followed with a judgment dismissing appellant's action. No testimony was offered by either party other than exhibits attached to the pleadings.

It appears that appellant borrowed from appellee the sum of $350, and that appellee required appellant to execute and deliver to her the promissory note in question for the sum of $367.50, the said $17.50 representing interest on principal for one year. The said note bore interest on said $367.50 at the rate of ten per cent (10%) per annum.

No claim is made by appellee that this is not a usurious contract.

The decree pro confesso and final decree in the foreclosure action recites that the defendant (mortgagor) was served with summons in the State of California. Under our statutes, this was equivalent to service of process by publication. The final decree recites that the note secured by the mortgage was past due and unpaid, and that there was due and owing to the plaintiff on the same from the defendant the sum of $367.50, with interest at the rate of ten per cent (10%) per annum, and the sum of $41 as attorney's fees; that all of said sums, together with costs paid out by the plaintiff, constituted a lien upon the property described, and that unless, within sixty days from the date of the decree, said lien is paid off and discharged, that the said lands and real estate described in the mortgage should be sold and the lien discharged out of the proceeds of the sale of such mortgaged property. There was no personal money judgment against the defendant (appellant), as of course there could not be under the state of the record.

Subsequent to the entry of the foreclosure decree, and prior to sale of the property pursuant thereto, appellant paid appellee the sum of $416.37, which was sufficient to discharge the note (contract) including the usurious interest. Consequently, no sale of the property was had.

Appellee (defendant in the instant case) urges that the decree in the foreclosure case, being between the same parties, is res judicata of the question of usury in the instant case; that the failure of the appellant to raise the question of usury at that trial forecloses her from raising it again. Appellee relies upon a statement of the doctrine of res judicata in Floersheim v. Board of Com'rs of Harding County et al., 28 N.M. 330, 212 P. 451, 453, as follows:

"There is a general doctrine to the effect that parties to a cause which has been decided upon the merits, and their privies,

are barred and foreclosed by the judgment and are forever estopped from again litigating, as between themselves, the same controversy. The doctrine extends further, and compels the parties to bring forward and present to the court every fact then existing in support of the claim or defense, and otherwise such fact is lost to the party who might have presented it, the same as if it had never existed. This doctrine * * * is familiarly called the doctrine of res adjudicata."

That case involved the prosecution of a second action by a taxpayer to assert a public right and to secure injunctive relief against the county commissioners, which had been denied to another taxpayer who sought the same relief and asserted the same right.

We do not doubt the correctness of the doctrine there announced as applicable to the facts in that case. We do doubt, however, its application to the case at bar.

 In re McMillan's Estate, 38 N.M. 347, 33 P.2d 369, 371, we approved the statement of the rules as follows:

" ' "In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered

upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *

" ' "But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." ' "

It seems to us that the present action is upon a different claim or demand than that upon which the foreclosure suit rested, and that a determination of the question here presented is more nearly controlled by the principles announced in the last paragraph of the foregoing quotation from the Re McMillan's Estate case.

 In a discussion of the rule of conclusiveness of judgments, as to subse-

quent suits on the same cause of action, in 15 R.C.L., Judgments, commencing at § 438, we find a statement of Limitations of Rule, at § 447, and at § 449 instances of defenses not lost, though not resorted to are enumerated, and it is there said:

"While a judgment is decisive of the points raised by the pleadings, or which might properly be predicated upon them, it does not embrace any matters which might have been brought into the litigation, or causes of action which the plaintiffs might have joined, but which in fact are not joined or embraced in the pleadings."

In the R.C.L. text last cited, it was also said: "It is generally held that a set-off may or may not be pleaded, at the election of the defendant; and if not pleaded, the right to sue upon it as an independent cause of action, or to rely upon it in defense in another action by the same plaintiff, is not affected or impaired by a judgment against the defendant. So whenever recoupment is sought the party entitled to it may interpose it as a defense, or bring a cross-action, and in general it is optional with him which course he will adopt. This proceeds upon the ground that recoupment is in effect the setting off of distinct causes of action."

A similar view is set forth in 24 R.C.L., Set-off and Counterclaim, § 91.

"The settled doctrine in the absence of statute is that set-off or recoupment may or may not be pleaded, at the election of the defendant, and that unless it is pleaded, the right to sue upon it as an independent cause of action, or to rely upon it in defense of another action by the same plaintiff, is in no wise affected or impaired by a judgment against the defendant. In some states it is provided by statute that if the defendant shall omit to set up a counterclaim belonging to a specified class, neither he nor his assignee can afterwards maintain an action against the plaintiff thereon; in other jurisdictions a defendant must plead a set-off in suits before a justice of the peace. And in still others if the defendant omits to set up a counterclaim he cannot recover costs in a subsequent action."

That the application of these principles is not different in a usury case is seen in McDonald v. Smith, 53 Vt. 33, holding the party paying the usury can plead it in offset; but his neglect to do so is no bar to his recovering it in an independent suit.

It seems appropriate at this point to again glance at our usury statute.

Prior to the 1933 amendment, the penalties were "only available defensively and by way of recoupment" (see Jaffa v. Lopez, 38 N.M. 290, 31 P.2d 988, 992). If they exceed the sum payable according to the contract, they would not support a judgment over for the borrower. Perhaps it was to remedy this situation that the 1933 amendment was adopted.

It seems appropriate to call attention to the difference in results to be obtained by the borrower in the limitation by recoup-

ment, and by affirmative independent action. In any action on the usurious contract, in case the borrower has not paid the interest contracted for, his recoupment will be the amount of the accrued interest contracted for, and he will recover his costs. If the borrower has paid the interest, his recoupment will be *twice* the amount of the interest paid and the accrued and unpaid interest. It seems that the penalty imposed upon the oppressor incident to contracting to receive usury is doubled when he receives the fruits of the evil design. Since, as we said in Jaffa v. Lopez, supra, under the original statute, "the only recovery provided for is by the lender", in the last mentioned instance the costs would follow the judgment, and the lender would recover such. Under the provisions of the 1933 amendment, the borrower, who has performed his contract, may recover *treble* the amount of interest he has paid and the costs would follow the recovery. Also, it is to be noted that in the case of recoupment merely, the right arises out of the transaction sued on by the lender and survives as long as the cause of action of the lender exists. 37 C.J., Limitations of Action, § 149. Whereas, an independent action by the borrower to recover under the provisions of the amendment is barred in three years after his cause of action accrues. So it appears that there are several distinguishing features between results of recoupment and an independent action.

From all of the foregoing, we are constrained to believe and we hold that the plea of res judicata must be denied.

Another question somewhat akin to the one heretofore discussed and affected by similar principles must now be answered.

■ Did the appellant, the borrower, perform his contract with the lender? The basis of the right of the borrower to recover treble damages is that he has performed the usurious contract.

It is claimed by appellee that the contract between the lender and the borrower was merged into the foreclosure decree, and that consequently the payment of the money named in the foreclosure decree as the amount due under the mortgage after entry of the decree, but before the date provided for the sale, was not performance of the contract. She cites in support of this contention Ryan v. Southern Mutual Building & Loan Association, 50 S.C. 185, 27 S.E. 618, 62 Am.St.Rep. 831, in which it was held that the judgment was a new debt not affected with the usurious nature of the cause of action; that the judgment involves two ideas, the contract upon which it is rendered and the judgment itself; that one is the act of the parties, and the other is the act of the court; that they are entirely separate and distinct, etc. This is a very interesting decision, and since we do not arrive at the same result, we mention two features which detract from its persuasiveness. It does not appear that the judgment in the former action was rendered upon default where the defendant was summoned by publication, and it appears that the defendant did not pay the judgment before sale, but that the said

judgment was satisfied out of the proceeds of the foreclosure sale.

The appellant, on the other hand, cites a decision of our neighboring Supreme Court of Oklahoma, Bean v. Rumrill, 69 Okl. 300, 172 P. 452, 457, which was similar in its facts to the South Carolina case, and in which the court reached a contrary result. The court said:

"It is well settled that, when a contract is originally usurious, the taint of usury attaches to all subsequent transactions in connection therewith, and even to a judgment founded upon such usurious transaction; that, where a statute authorizes the recovery of interest paid on a usurious contract, the same may be recovered, notwithstanding the payment was made in pursuance of a judgment into which the usurious contract had become merged. The fact that the defendant had agreed to the judgment does not matter. Such an agreement is but another transaction in furtherance of the original unlawful contract. In Wood v. Todd, 3 Baxt. (Tenn.) 89, it is said:

" 'It follows, that, when a judgment was confessed by Todd, the question of usury was not, in fact, involved, nor was he bound to make the question, but he had the right to let the judgment go, and reserve the right to resort to a separate action of debt for the amount of usury already paid.'

"In Kendig v. Marble, 55 Iowa 386, 7 N. W. 630, it is said:

" 'The law will permit no device to cover and protect a usurious contract. If a judgment by confession, or otherwise, be a part of such device intended to prevent the disclosure of the real character of the contract, it will not bind the parties. If the law were otherwise, the usurer could with little trouble defeat the statute,' etc.

"Also see Long v. Moore, 59 Tex.Civ. App. 579, 126 S.W. 345; Sherley v. Trabue, 85 Ky. 71, 2 S.W. 656; Equitable Loan & Inv. Co. v. Smith (Ky.) 65 S.W. 609; Richter v. Burdock, 257 Ill. 410, 100 N.E. 1063.

"From the principles just enunciated and under the authorities cited, it follows that defendant's contention as to the judgment in the foreclosure proceedings being res adjudicata also falls. The action for twice usurious interest paid is independent, and exists irrespective of whether or not a suit is brought on the usurious contract by the holder of the same. Even if such interest is paid prior to the complete extinction of the indebtedness and before a suit is brought thereon, such right of action would not be lost by failure to set up the same by way of cross-action. Like any other cause of action, it can be brought at any time within the limitation imposed by statute."

We are conscious of a leaning toward the view of the Oklahoma Supreme Court. Our statute does not say that in order for the borrower to bring his action for recovery of treble damages, the amount of

usurious interest "collected" by the lender, that he shall have first *voluntarily* performed the contract. Indeed, at the common law, the theory upon which usurious payments were recoverable was that the borrower was acting under compulsion. We find the following in Webb on Usury, § 460:

"The common law courts distinguished a class of statutes, a payment made in violation of the provisions of which did not fall within the operation of the rule of in pari delicto. The distinction is well stated in note F to the case of Jones v. Barkley, Dougl. [(K.B.) 684], 697, a.: 'Where the law that creates the illegality in the transaction, was designed for the coercion of one party and the protection of the other, or where one party is the principal offender and the other only criminal, from a constrained acquiescence in such illegal conduct in these cases there is no parity of delictum at all between the parties.' * * * It is observable that the reasoning which relieves the payer of the character of particeps criminis, also takes his payment out of the operation of the rule relative to voluntary payments. No payment obtained through oppression or undue advantage is voluntary, and the law presumes every payment made to a person who is by statute forbidden to receive it, where the statute is for the protection of the payer, as made through oppression and undue advantage."

There are additional reasons for concluding that under the facts in the case at bar the "contract" was not merged in the foreclosure decree.

As we have seen, the judgment in the foreclosure action was upon defendant's default, she being in effect served with process by publication. In 34 C.J., Judgments, discussing this question of Res Judicata, and as to what judgments are operative as a bar, the writer comes to § 1199 for a discussion of Judgments by Default, saying:

"A judgment rendered upon default, in a case where the court has full jurisdiction, operates as a merger of the cause of action and prevents any further suit upon the same subject matter. *But this rule does not apply where defendant was summoned by publication only, * * *.*" (Italics supplied.)

This is cited solely to the proposition that merger of the cause of action may be affected by the manner of service.

Of particular interest is the case of Smith v. Curtiss, 38 Mich. 393, cited to the text, holding that a judgment in attachment, where there is no appearance, may not later be made the basis of a personal action against the defendant, nor successfully pleaded in bar to a subsequent action on the original demand. The court said: "There being no personal service in the case commenced by attachment and no appearance, and no part of the judgment rendered therein having been satisfied under the attachment proceedings, such judgment would not bar a personal action upon the note, * * *."

This would seem to be sound reasoning. See, also, Roose v. McDonald, 23 Ind. 157, 162. In Henrie v. Sweasey, Admr., 5 Blackf. Ind., 335, the court said: " * * * a judgment in a proceeding by attachment, when the defendant did not appear to the action, cannot be made the foundation of a suit. When in a suit, the defendant has been served with process, and has appeared, or might have appeared to defend it, the judgment of the Court is, in general, conclusive between the parties as to the indebtedness of the defendant to the amount of the judgment. On such a judgment an action will lie, and the defendant cannot deny the debt. This principle is familiar. But in the process by attachment, the proceedings are against the property only of the defendant, and where execution is awarded, it issues against the property attached, and nothing else. If it pays the debt, it is well; if not, the original debt, so far as it remains unpaid, continues."

To the same effect see Stone v. Myers, 9 Minn. 303, 9 Gil. 287, 86 Am.Dec. 104; Toby v. Brown, 6 English 308, 11 Ark. 308, and for a discussion of merger or former recovery generally, see Freeman on Judgments, 5th Ed., Chap. 10. At § 582, Mr. Freeman says: "Rights both in personam and in rem sometimes arise out of the same transaction based upon what is in one aspect a single debt or obligation. Such rights of action are in legal effect different causes of action. Consequently a mere unsatisfied judgment upon one does not merge the other. This rule is exemplified in case of liens or mortgages constituting collateral securities."

At § 585, the author says: "A mere judgment or decree of foreclosure does not merge the mortgage debt so as to impair the lien of the mortgage; but such a decree followed by a sale discharges the lien, unless the sale is legally ineffective. Except where the statute or the contract itself requires a debt secured by mortgage to be enforced by a single action, the debt and the mortgage securing it are independent causes of action and the recovery of judgment for a debt, except to the extent that it has been satisfied, does not preclude subsequent proceedings to enforce a mortgage or other lien given to secure its payment, * * *."

At § 586, it is said: "Neither will a proceeding to charge property with the payment of a debt or judgment amount to a merger thereof. A mortgage or other lien being merely a collateral security, the judgment or decree foreclosing it does not necessarily merge or discharge the debt secured. * * * If no valid personal judgment was entered against the defendants because no personal jurisdiction was obtained over them, a personal action against them, at least for any deficiency, is not barred."

Although there was a decree in foreclosure against appellant providing for the sale of real estate under the mortgage given to secure the payment of the "contract" (note), circumstances might arise wherein the lender might conclude that she would not rely upon the foreclosure decree

and seek a personal judgment against the borrower. Reaching such a conclusion, and if able to get personal service of process upon the borrower, the suit for personal judgment would doubtless be upon the contract.

From all of the foregoing, we conclude that the appellant, the borrower, performed the contract, and that she was entitled, under the facts stated in the record, to maintain her action, and that the trial court erred in sustaining appellee's motion for judgment on the pleadings and dismissing the cause.

The judgment is reversed, and the cause remanded, with directions to the district court to sustain plaintiff's motion for judgment on the pleadings and to render an appropriate judgment in plaintiff's favor, and it is so ordered.

BRICE, C. J., and ZINN, SADLER, and MABRY, JJ., concur.