587 P.2d 435

**RUIDOSO STATE BANK,
Plaintiff-Appellant,**

v.

**Danny GARCIA and Lillian Garcia,
Defendants-Appellees.**

**No. 11950.**

Supreme Court of New Mexico.

Nov. 30, 1978.

Ronald G. Harris, Ruidoso, for plaintiff-appellant.

Stagner, Higginbotham & Oas, Ronald Higginbotham, Keith R. Oas, Roswell, for defendants-appellees.

## OPINION

EASLEY, Justice.

Ruidoso State Bank seeks replevin, under security agreements, of two vehicles owned by Danny and Lillian Garcia. The Bank had previously obtained a default judgment in this case on promissory notes and had levied on the two vehicles. However, the Garcias claimed an exemption and the district court released the vehicles. The trial court denied the writ of replevin. The Bank appeals.

The issues are:

1. Is the Bank precluded from replevying the vehicles under the security agreements by having first sued on the debt and having obtained a default judgment thereon?

2. Did the Bank's security interest in the two vehicles "merge" into the judgment for the debt?

The Bank's complaint asked for judgment on two promissory notes covering loans on an automobile and a truck owned by the Garcias, upon which the Bank also had security agreements. However, the complaint did not seek to foreclose the security agreements. Default judgment was entered. Thereafter the Bank filed an affidavit in replevin seeking possession of the vehicles pursuing to its security agreements. There were allegations that the automobile was "consumer goods" and that the truck was used for business. The court denied the writ and concluded that the Bank, by suing on its debt instead of foreclosing its security agreements, had elected its remedy under the New Mexico Uniform Commercial Code and was therefore precluded from pursuing its collateral through a replevin action. The trial court further concluded that the security agreements had merged into the judgment on the notes.

The New Mexico Uniform Commercial Code provisions are controlling in this case. Section 50A–9–501(1), N.M.S.A.1953 (Supp.1975) states:

When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by an available judicial procedure. . . . *The rights and remedies referred to in this subsection are cumulative.* (Emphasis added.)

There is nothing ambiguous about this statutory provision. It plainly states that the remedies of proceeding on the note and the security agreement are cumulative. Each of them remains in force although efforts may have been made to collect the debt by the alternate means. 2 G. Gilmore, *Security Interests in Personal Property* § 43.7, at 1209–10 (1965). The comments under U.C.C. § 9–501 indicate that a judgment lien acquired by a secured creditor creates no new interest in the creditor but is instead a continuation of the original interest created by the security agreement. 3 Uniform Laws Anno., U.C.C. § 9–501, Comment 6 (1978 Pamphlet at 138). Section 50A–9–501(5) provides that:

[T]he lien of any levy which may be made upon [the] collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral.

It was the obvious purpose of these sections to abolish the doctrine of election of remedies. In White and Summers, *Uniform Commercial Code*, § 26–4 at 964–65 (1972) it is stated:

Under pre-Code law, courts often held that the secured creditor who sued on the debt irrevocably elected to seek his sole remedy by that method. Thus, the courts thought that a suit on the debt was inconsistent with a subsequent claim by the seller-creditor that he retained title to the goods under a conditional sales contract. The election of remedy issue arose early under the Code, and the Third Circuit held that the creditor could first recover in an action on the underlying obligation and if that proved unsuccessful, later enforce the security agreement.

See *In re Adrian Research & Chemical Co.*, 269 F.2d 734 (3d Cir. 1959); P. Coogan, *Secured Transactions of the Uniform Commercial Code*, § 8.08(1) (1977).

■ The Garcias' claim of merger of the debt into the judgment is not persuasive, considering that the statutes give the Bank two separate and independent causes of action. It has been held by this Court that a debt and a mortgage securing it are separate and independent causes of action. *Flint v. Kimbrough*, 45 N.M. 342, 115 P.2d 84 (1941). The recovery of a judgment for a debt, except to the extent that it has been satisfied, does not prevent later proceedings to enforce a mortgage or other lien given to secure its payment. This Court has held that the creditor is not deprived by the judgment of his right to resort to a fund, or to avail himself of a lien or security held for the debt. *Tindall v. Bryan*, 54 N.M. 114, 215 P.2d 355 (1950). Although the cause of action may be merged into the judgment, the debt may be carried forward to prevent the destruction of contract rights. *Cabot v. First National Bank of Santa Fe*, 81 N.M. 795, 474 P.2d 478 (1970).

Merger does not apply here for the reason that the Bank had two separate causes of action. It could sue and reduce the debt to judgment. In that case the debt would be merged into the judgment. However, the debt would be carried forward so that the Bank's rights under the security agreement would not be destroyed. The security agreements, under the statutory prohibition, would not be merged into the judgment.

The Garcias claim that the 1971 amendment to the New Mexico Uniform Commercial Code, § 50A–9–504(2), N.M.S.A.1953 (Supp.1975), prohibits the payment of a deficiency by the debtor in the event creditor chooses to repossess the collateral. This section reads:

(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency, except, a debtor is not liable for any deficiency where the collateral involved is consumer goods.

The Garcias claimed, and the trial court agreed, that by taking judgment first on the underlying obligation on consumer goods covered by a security agreement, the Bank forfeited its right to replevin the security, since the above statute prohibits taking a "deficiency."

This position is not sound for the reason that the 1971 amendment by its own terms contemplates a "deficiency." There can be no deficiency unless there has been a repossession and sale of the consumer goods. Thus, until there has been a sale of the consumer goods in this case and an attempt made to collect any deficiency, the Garcias have not been harmed. At such time as an effort is made to collect a deficiency, if any, the Garcias will then have cause to complain insofar as it pertains to any consumer goods involved.

We hold that the Bank is not barred under the doctrine of election of remedies from pursuing its remedies under the security agreements and that the security agreements were not merged into the judgment for the debt.

The decision of the district court is reversed and the case is remanded. The court shall consider the replevin action of the

Bank in conformity with the principles set out herein.

IT IS SO ORDERED.

McMANUS, C. J., and SOSA, J., concur.