(No. 62594.-

STATE BANK OF PIPER CITY, Appellee, v. A-WAY, INC., Appellant.

*Opinion filed February 20, 1987.*

James B. Kinzer, of Bell, Razzano, Blunk, Kinzer & Lustfeldt, of Watseka, for appellant.

Gordon M. Kinate, of Kinate & Morgan, of Fairbury, for appellee.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, State Bank of Piper City, filed a complaint in the circuit court of Iroquois County against the defendant, A-Way, Inc., to enforce its security interest in grain and the proceeds from sales of grain held by the defendant on account for a debtor of the plaintiff. The

circuit court granted the defendant's motion to dismiss the complaint and denied the plaintiff's motion to vacate the order of dismissal. On the plaintiff's appeal, the appellate court reversed and remanded (135 Ill. App. 3d 1010), and we granted the defendant's petition for leave to appeal (103 Ill. 2d R. 315).

All facts properly pleaded in a complaint and its exhibits are to be taken as true in considering whether to grant a motion to dismiss. *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 284.

In February 1982, the plaintiff was awarded a judgment in the amount of $131,083.91 against William C. Brenner upon his default on promissory notes that had been secured, under article 9 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1979, ch. 26, par. 9—101 *et seq.*), by a security interest in grain owned by Brenner which was stored in the defendant's warehouse. In a supplementary proceeding to enforce its judgment (Ill. Rev. Stat. 1981, ch. 110, par. 73), the plaintiff served the defendant with a citation to discover assets that it held on Brenner's behalf. The defendant responded by an affidavit acknowledging the accuracy of an attached ledger sheet with information regarding Brenner's account. The ledger sheet listed, *inter alia,* the number of bushels of grain the defendant held for him, 5,141.20, and the costs of drying and storing the grain. The plaintiff then moved for a citation order requiring the defendant to pay the plaintiff $5,141.20, confusing the number of bushels with their value, "as partial satisfaction for the judgment entered" in its suit against Brenner. The court held a hearing at which the defendant failed to appear, and allowed the plaintiff's motion. Acting upon the order, the defendant sold the grain, obtaining $11,310.64; of that amount, the defendant remitted $5,141.20 to the plaintiff and applied the balance to outstanding charges on Brenner's accounts.

Approximately eight months later, realizing its mistake, the plaintiff brought this action under article 9 of the UCC (Ill. Rev. Stat. 1979, ch. 26, par. 9—101 *et seq.*), to enforce its security interest in the proceeds of the grain sale over and above $5,141.20. The court dismissed the plaintiff's complaint on the grounds that the doctrines of merger and *res judicata* barred the suit. As stated, the appellate court reversed the dismissal.

The defendant first contends that the trial court properly dismissed the plaintiff's complaint under the doctrine of merger and that any rights the plaintiff had under the promissory notes of Brenner merged into the judgment, extinguishing any interest it had in the grain. " 'The general rule is, that by a judgment at law or a decree in chancery, the contract or instrument upon which the proceeding is based becomes entirely merged in the judgment. By the judgment of the court it loses all of its vitality and ceases to bind the parties to its execution. Its force and effect are then expended, and all remaining legal liability is transferred to the judgment or decree. Once becoming merged in the judgment, no further action at law or suit in equity can be maintained ***.' " (*Doerr v. Schmitt* (1941), 375 Ill. 470, 472, quoting *Wayman v. Cochrane* (1864), 35 Ill. 152, 154; *Rock Island Bank & Trust Co. v. Stauduhar* (1978), 59 Ill. App. 3d 892, 900.) Second, under principles of *res judicata*, it says, citing *Hughey v. Industrial Com.* (1979), 76 Ill. 2d 577, 582-83, that the plaintiff is barred from bringing the present action because the issue now raised could have been litigated in the citation proceeding.

The defendant's contentions have not been directly addressed by this court: We judge that, under the language of article 9 of the UCC (Ill. Rev. Stat. 1979, ch. 26, pars. 9—501(1), (5)) and from constructions in other jurisdictions, these contentions are without merit.

Section 9—501(1) of the UCC serves to broaden the

options available to a secured creditor upon a debtor's default. (*Michigan National Bank v. Marston* (1970), 29 Mich. App. 99, 107, 185 N.W.2d 47, 51, cited in *McCollough v. Mobiland, Inc.* (1976), 139 Ga. App. 260, 263, 228 S.E.2d 146, 148-49; *Land v. Cessna Aircraft Co.* (Fla. App. 1985), 466 So. 2d 1265, 1268.) Section 9—501(1) of the UCC states:

> "When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part [concerning default] ***. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. *** The rights and remedies referred to in this subsection are cumulative." (Ill. Rev. Stat. 1979, ch. 26, par. 9—501(1).)

When a secured creditor has chosen to reduce his claim to judgment "the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral" (Ill. Rev. Stat. 1979, ch. 26, par. 9—501(5)) and serve as a continuation of the secured creditor's original perfected security interest (Ill. Ann. Stat., ch. 26, par. 9—501(5), Uniform Commercial Code Comment, at 322 (Smith-Hurd 1974)). Thus, a secured creditor's effort to collect its debt through the judicial process will not "operate to destroy his security interest vis-a-vis the debtor or to impair its priority [interest] over third parties" (2 G. Gilmore, Security Interests in Personal Property sec. 43.7, at 1209-10 (1965); *Tax/Investments Concepts, Inc. v. McLaughlin* (Okla. 1982), 670 P.2d 981, 984), because a secured creditor may take any action or combination of actions necessary to satisfy the debt (*Ceres Fertilizer, Inc. v. Beekman* (1981), 209 Neb. 447, 450-51, 308 N.W.2d 347, 349; *Bilar, Inc. v. Sherman* (1977), 40 Colo. App. 38, 41, 572 P.2d 489, 491; *Ruidoso State Bank v. Garcia* (1978), 92 N.M. 288, 289-90, 587 P.2d 435, 437; *Olsen v. Valley*

*National Bank* (1968), 91 Ill. App. 2d 365, 371; B. Clark, Secured Transactions under the Uniform Commercial Code par. 4.3[2], at 4—15 (1982); J. White & R. Summers, Uniform Commercial Code sec. 26—4, at 962 (1972); E. Reiley, Security Interests in Personal Property sec. 15.1, at 15—2 (1981)). See also *First National Bank v. Lachenmyer* (1985), 131 Ill. App. 3d 914, 925-26 (where the appellate court, in an action involving the propriety of a secured creditor's taking possession of collateral under section 9—207 of the UCC (Rights and Duties When Collateral Is in Secured Party's Possession), stated that the rights and remedies of a secured creditor are cumulative, permitting him to proceed with one remedy, then another).

The doctrine of merger does not, contrary to the defendant's argument, preclude a secured creditor from enforcing its security interest in the property given as collateral.

In *Ruidoso State Bank v. Garcia* (1978), 92 N.M. 288, 587 P.2d 435, cited above, a secured creditor earlier had brought suit to enforce its security interest in two vehicles which it had previously levied upon in satisfaction of a judgment against its debtors upon their default on promissory notes. The vehicles, however, had been released upon a trial court's finding that they were exempt property. Subsequently the secured creditor brought the suit involved. The debtors argued, *inter alia*, that by foreclosing on the notes the secured creditor caused the security agreements executed by the debtors to merge in the judgment, precluding their subsequent enforcement. The court rejected this contention, holding:

> "Merger does not apply here for the reason that the Bank [, the secured creditor,] had two separate causes of action. It could sue and reduce the debt to judgment. In that case the debt would be merged into the judgment. However, the debt would be carried forward so that the

Bank's rights under the security agreement would not be destroyed. The security agreements, under the statutory prohibition [*i.e.*, under article 9 of the UCC], would not be merged into the judgment." *Ruidoso State Bank v. Garcia* (1978), 92 N.M. 288, 290, 587 P.2d 435, 437.

In *Tax/Investments Concepts, Inc. v. McLaughlin* (Okla. 1982), 670 P.2d 981, a secured creditor brought suit to recover a judgment on the debtors' promissory note and for possession of certain personal property of the debtors which was subject, the creditor claimed, to its security interest. The trial court awarded the secured creditor possession of the property in partial satisfaction of the judgment on the note. On appeal, the defendant contended that the trial court erred in that in a prior lawsuit the secured creditor obtained an attachment order and levied upon the collateral, thereby waiving its "contractually created security in the attached property." The court rejected the contention, stating that section 9—501 of the UCC "clearly provides that the act of the secured party in levying or executing on the collateral does not waive the contractual security interest provided for in the note and loan agreement." (*Tax/Investments Concepts, Inc. v. McLaughlin* (Okla. 1982), 670 P.2d 981, 984.) Although *Tax/Investments Concepts* was not specifically decided on the issue of merger, the court's decision clearly recognizes that an interest under a security agreement in personal property is separate and independent of an interest in collateral that was created by the note itself.

Here even though the notes merged in the judgment precluding further action on the notes (*Doerr v. Schmitt* (1941), 375 Ill. 470, 472; *Rock Island Bank & Trust Co. v. Stauduhar* (1978), 59 Ill. App. 3d 892, 900), that merger did not preclude the plaintiff from bringing this action to enforce its security interest in the grain. That security interest was provided for in security agreements

separate from and independent of the notes. The security agreements provided that upon the debtor's default the secured creditor "shall have all of the rights and remedies of a secured party under the Illinois Uniform Commercial Code," remedies which are, as previously stated, "cumulative." Furthermore, the "lien of any levy," which was made upon the grain pursuant to the plaintiff's judgment against Brenner, related back to the time of perfection of the security interest. (Ill. Ann. Stat., ch. 26, par. 9—501(5), Uniform Commercial Code Comment, at 322 (Smith-Hurd 1974).) Thus, the merger of the note in the plaintiff's judgment against Brenner and the plaintiff's citation to discover assets proceeding did not affect the plaintiff's security interest in the remaining grain-sale proceeds.

The defendant next contends that the plaintiff is barred under *res judicata* from bringing the present action against A-Way, Inc.

"The doctrine of *res judicata* provides that 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action.' (Emphasis added.) [Citation.] When *res judicata* is established 'as a bar against the prosecution of a second action between the same parties upon the same claim or demand *** it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose. ***' " *Housing Authority for La Salle County v. YMCA* (1984), 101 Ill. 2d 246, 251-52.

Because of the provision under article 9 of the UCC for multiple and cumulative remedies upon the debtor's default, *res judicata* will not bar a secured creditor from exhausting his remedies under the UCC.

In *Hill v. Bank of Colorado* (10th Cir. 1981), 648 F.2d 1282, a trustee in bankruptcy maintained that a secured creditor was downgraded to the status of a general creditor. The trustee argued that prior to the bankruptcy proceeding the secured creditor obtained an *in personam* judgment against the debtor; failing to take execution on that judgment, the secured creditor was precluded from enforcing its security interest against the trustee. To support its position the trustee contended that the legislature, by providing in section 9—501 that the rights and remedies referred to were "cumulative," intended only to abrogate the doctrine of election of remedies and not to make the doctrine of *res judicata* inapplicable. The court rejected the argument, holding that to interpret *res judicata* so as to preclude a secured creditor from asserting the different remedies provided in section 9—501 "would be to nullify the word 'cumulative' in the statute." *Hill v. Bank of Colorado* (10th Cir. 1981), 648 F.2d 1282, 1286.

In *Ruidoso*, which was discussed above, the court also addressed the debtors' claim that the secured creditor, by foreclosing on the debt in a prior action, made an election of remedies precluding enforcement of its security interest. The court rejected this contention, holding that sections 9—501(1) and (5) abolished the doctrine of election of remedies and allowed a secured creditor to pursue any remedy available under that section, despite prior "efforts [that] may have been made to collect the debt by alternate means." *Ruidoso State Bank v. Garcia* (1978), 92 N.M. 288, 289, 587 P.2d 435, 436.

See also *Bilar, Inc. v. Sherman* (1977), 40 Colo. App. 38, 572 P.2d 489 (where it was held that a secured creditor's security interest in collateral was unaffected by its prior attempt to levy upon the collateral); *Ceres Fertilizer, Inc. v. Beekman* (1981), 209 Neb. 447, 308 N.W.2d 347 (where it was determined that an improperly ob-

tained attachment, issued against the proceeds from the sale of corn subject to a security interest in a secured creditor, did not preclude the secured creditor from pursuing its remedies under the security agreement). Contra, *In re Wilson* (D. Kan. 1975), 390 F. Supp. 1121, 1125 (the court held that a secured creditor who obtained an *in personam* judgment against the debtor without asserting its security interest was barred under *res judicata* from bringing a subsequent action to enforce that interest. The court, recognizing that section 9—501 remedies were cumulative, held that a secured creditor did not make an election of remedies if the remedies were pursued simultaneously, but did so if they were pursued in separate actions). The *Wilson* decision, however, has not been followed. See *Hill v. Bank of Colorado* (10th Cir. 1981), 648 F.2d 1282; *Bank of Oklahoma v. Fidelity State Bank & Trust Co.* (D. Kan. 1985), 623 F. Supp. 479; B. Clark, Secured Transactions under the Uniform Commercial Code par. 4.3[2] (1985 Cum. Supp. No. 2).

Although the decisions cited involved successive actions against a debtor in default, there is no reason not to apply the same principles to situations, as here, involving third parties. Not to do so would defeat the purpose of article 9 in providing a secured creditor with multiple remedies upon a debtor's default.

That the order entered in the citation proceeding against the defendant was a final order (*Illinois Brewing & Malting Co. v. Ilmberger* (1910), 155 Ill. App. 417, 418) does not, under *res judicata*, preclude the plaintiff from bringing the present action. The order was entered in execution of the plaintiff's judgment against Brenner. Here, the plaintiff is acting in its capacity as a secured creditor attempting to enforce its article 9 security interest in the surplus proceeds from the sale of the grain, proceeds which it mistakenly omitted in the citation pro-

ceeding. The action of the plaintiff in the citation proceeding does not bar the plaintiff from proceeding here.

The defendant argues too that if the plaintiff is permitted to proceed with this action it will suffer undue hardship because it has applied the proceeds remaining from the sale to its other accounts of Brenner. The argument appears to border on effrontery. The defendant in the argument admitted that it knew the amount of the plaintiff's judgment against Brenner; that it was aware that the plaintiff had made a mistake in requesting that it pay the plaintiff 5,141.20 dollars instead of bushels; and that it did not disclose to the plaintiff the amount it received from sale of the grain. These may have been considerations in the defendant's not appearing at the citation proceeding. If we were to conclude that fraud had been present, which under our analysis we need not do, *res judicata*, of course, would not be applicable. *Hughey v. Industrial Com.* (1979), 76 Ill. 2d 577, 583; *McNely v. Board of Education* (1956), 9 Ill. 2d 143, 151-52.

For the reasons given, we hold that the trial court erred in dismissing the complaint. The judgment of the appellate court reversing and remanding the cause is affirmed.

*Judgment affirmed.*