KUSAN, INC., Plaintiff,

v.

PURITAN MILLS, INC., Defendant.

Civ. A. No. C87–825A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 6, 1987.

Kent E. Mast, William B. Smith, Thomas Samuel Richey, Robert A. Lonergan, Hansell & Post, Atlanta, Ga., for plaintiff and counter defendant.

John Kennedy Dunlap, Atlanta, Ga., for defendant and counter claimant.

L. Catherine Cox, Hansell & Post, Atlanta, Ga., for Kusan, Inc.

## ORDER

SHOOB, District Judge.

Plaintiff Kusan, Inc. ("Kusan") brought this action to recover amounts due for vinyl siding delivered to Puritan Mills, Inc. ("Puritan"). Puritan filed counterclaims alleging anti-trust violations and wrongful termination of Puritan's distributorship. Presently before the Court is Kusan's motion for summary judgment on the complaint.

*Plaintiffs' Motion for Summary Judgment*

At the outset, the Court will set forth the standard controlling practice under Rule 56, Fed.R.Civ.P. To prevail at summary judgment, the moving party must demonstrate the absence of genuine disputes of material fact and factual inferences. *Thrasher v. State Farm Fire and Casualty Co.,* 734 F.2d 637, 638–39 (11th Cir.1984) (per curiam). Recent Supreme Court cases have explained that the moving party need not negate the nonmoving party's case; instead, "the burden on the moving party may be discharged by 'showing'—that is, point out . . .—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. *Celotex,* 106 S.Ct. at 2553–54. Thus, summary judgment is appropriate where there is no genuine issue of material fact and, viewed in the light most favorable to the nonmoving party, the undisputed facts warrant judgment as a matter of law. *Id.* at 2555.

The undisputed facts in this case are as follows:

Prior to April 28, 1987, Puritan was a distributor of Kusan's vinyl siding products and maintained an open account with Kusan. Periodically, vinyl siding was shipped to Puritan; each shipment was accompanied by an invoice stating the quantity and price of each product delivered. Each month, Kusan sent Puritan a statement of account. After receiving each monthly statement, Puritan sent Kusan a "remittance advice," claiming adjustments, stating inventory, and making payment for the remaining amount owed. Adjustments to the amount due were governed by paragraph six on page three of the security agreement which stated:

> The amount due shall be determined by deducting from the regular Mastic[1] statement of account:
>
> 1) Adjustments for material shortages, price corrections, alleged defective material and other claims of a nature normally asserted by a purchaser.

Pursuant to the security agreement, Puritan was required to pay Kusan by the tenth of the month following Puritan's resale of goods delivered by Kusan to Puritan. The agreement also provided that Kusan was a secured creditor with a security interest in the vinyl siding products and their proceeds.

On March 28, 1987, Kusan sent an account statement to Puritan. On April 10, 1987, Puritan returned a remittance advice claiming a credit of $550,000 based on its claim that Kusan had been charging Puritan more than its other distributors since 1974 without any justification.[2] Kusan responded on April 28, 1987, by declaring Puritan in default under paragraph eleven of the security agreement, terminating Pu-

---

**1.** "Mastic" was Kusan's predecessor corporation. The parties do not dispute that the agreement is binding on Puritan and Kusan and that "Kusan" may be substituted for "Mastic" wherever the name appears in the agreement.

**2.** Lawrence Zaglin, president of Puritan, states by affidavit that he began to suspect that Puritan was being charged more than other distributors in late 1985. He states that he attempted to discuss pricing policies with Kusan but was unable to obtain a satisfactory answer to his questions. He says that he took the $550,000 credit to compel Kusan to resolve its pricing practices.

ritan's distributorship, and accelerating Puritan's indebtedness.

After Kusan terminated the agreement, it sent one load of vinyl siding products to Puritan by mistake. Puritan does not dispute that the shipment was received on June 29, 1987 and was not paid for.

Kusan now seeks summary judgment on counts one, two, and three of its second amended complaint. In counts one and two, Kusan seeks to repossess collateral and recover for indebtedness incurred before April, 1987. In count three, Kusan seeks to recover the shipment that was sent to Puritan in June, 1987, or its value, $12,057.14. In opposition to Kusan's motion for summary judgment, Puritan acknowledges that it received the vinyl siding and did not pay for it, but argues that the $550,000 credit was authorized by the terms of the security agreement and by the custom and course of conduct of the parties. According to Puritan, Kusan was not entitled to declare Puritan in default because the $550,000 credit claimed was a "claim of a nature normally asserted by a purchaser" within the meaning of paragraph six of the security agreement.

■ The construction and interpretation of a written contract is a matter of law for the Court and is therefore properly a subject for summary disposition. *Sims' Crane Service, Inc. v. Reliance Insurance Co.*, 514 F.Supp. 1033, 1036 (S.D.Ga.1981). Under Georgia law, the Court construing the contract must ascertain the intent of the parties, *Hull v. Lewis*, 180 Ga. 721, 180 S.E. 599 (1935), and give the contract a fair and reasonable construction. *Hall v. Simkins Industries, Inc.*, 584 F.Supp. 955 (N.D.Ga.1983).

In the Court's view, a contract clause that allows adjustments for claims "of a nature normally asserted by a purchaser" cannot reasonably be read to allow a $550,000 adjustment for alleged antitrust violations taking place over a period of thirteen years. The law is clear that antitrust violations may not be asserted to avoid paying for goods received. *See, e.g., Kelly v. Kosuga*, 358 U.S. 516, 518, 79 S.Ct. 429, 430, 3 L.Ed.2d 475 (1959); *Viacom Int'l, Inc. v.*

*Tandem Productions, Inc.*, 526 F.2d 593 (2d Cir.1975). Moreover, there is nothing in the record to indicate that the contract provision was intended to allow the assertion of antitrust claims in lieu of payment for goods sold and delivered.

Puritan cites the affidavit of Lawrence Zaglin, president of Puritan, as evidence that the course of conduct of the parties supports Puritan's construction of the contract. However, the affidavit states only that Puritan always took credit for disputed amounts on the monthly remittance advice forms. The affidavit presents no evidence that Kusan had ever previously accepted or intended to include allegations of antitrust violations as adjustments to amounts due. Therefore, the Court concludes that the $550,000 credit claimed was not authorized by the terms of the contract.

■ The Court must next decide whether there is any genuine issue as to the amount Kusan is entitled to recover. Kusan's complaint and documents submitted in support of its motion for summary judgment indicate account indebtedness of $1,404,822.91. Puritan claims various credits and adjustments amounting to $86,510.57, and asserts that the amount of its antitrust claim of $550,000 should be set-off against Kusan's recovery. These issues may be easily disposed of. First, counsel for Kusan has elected not to contest the $86,520.67 credit adjustment. Next, in light of the established line of cases holding that antitrust violations may not be asserted to avoid paying for goods received, defendant is not entitled to set-off the amount of his antitrust claim against the contract debt. *Compare Crivello v. Four Brothers, Inc.*, 71 F.R.D. 218 (E.D.Wis.1976). Therefore, plaintiff is entitled to recover $1,318,312.34 as the remaining undisputed account balance on counts one and two of the second amended complaint.

Puritan does not dispute that the value of the shipment received in June, 1987 is $12,057.14. Therefore, summary judgment will also be entered in favor of Kusan on

count three of the second amended complaint.[3]

*Plaintiff's Motion for Entry of Final Judgment*

■ Under Rule 54(b), Fed.R.Civ.P., the Court may direct the Clerk to enter final judgment on one or more but fewer than all the claims involved in an action upon making a determination that there is no just reason for delay in entering judgment. Kusan urges the Court to make that determination and enter final judgment on counts one, two, and three of the second amended complaint.

Puritan offers several reasons for delaying entry of final judgment. First, Puritan argues that it may be successful in its antitrust claims and obtain a judgment that is greater than the amount of the judgment in Kusan's favor on the contract claims. This argument must be rejected in light of *Kelly v. Kosuga* and its progeny. In *Viacom International*, Judge Lumbard of the Second Circuit Court of Appeals stated,

> An easy toleration of antitrust defenses to contract actions would threaten to involve parties claiming under the contract in litigation so protracted and expensive that they might be coerced into unsatisfactory settlements or be compelled to forego any prosecution of their claims.

*Viacom International*, 526 F.2d at 599. Courts have consistently favored independent resolution of contract and antitrust claims and have not hesitated to enter final judgment on a contract claim while an antitrust claim is still pending. *See, e.g., Crivello*, 71 F.R.D. at 219.

Puritan next argues that before obtaining a final money judgment, Kusan must secure a writ of possession and deduct the value of the repossessed inventory from the total indebtedness. This argument is unpersuasive. Any amount that is realized on the repossessed collateral operates as a partial satisfaction of the judgment for a fixed amount. *See* O.C.G.A. § 11–9–501(1); *Ruidoso State Bank v. Garcia*, 92 N.M.

288, 587 P.2d 435, 437 (1978) (bank entitled to possession of collateral even though it first obtained unsatisfied judgment on underlying obligation).

Third, Puritan asserts that entry of final judgment would be inappropriate because the facts of the claims are intertwined. The Court cannot agree. The only fact that links the claims is that Puritan's president first asserted his antitrust claim on a remittance advice form. This fact alone does not intertwine two claims that are otherwise legally and factually unrelated. Therefore, the Court finds no just reason for delay and will direct the Clerk to enter final judgment on counts one, two, and three of the second amended complaint.

*Conclusion*

The Court GRANTS plaintiff's motion for summary judgment on counts one, two, and three of the second amended complaint. The Court finds no just reason for delay in the entry of final judgment; and, pursuant to Rule 54(b), Fed.R.Civ.P., DIRECTS the Clerk to enter judgment in favor of plaintiff as follows:

1. As requested in counts one and two of the second amended complaint, a writ of possession shall issue enabling Kusan to repossess all remaining secured collateral in defendant's possession. Further, a money judgment in the amount of $1,318,312.34 shall be entered. The money judgment shall be deemed partially satisfied by the value of the secured collateral returned to plaintiff under the writ of possession.

2. On count three of the second amended complaint, Puritan shall return the shipment of Kusan products delivered to Puritan in June, 1987 or $12,057.14 if said products are no longer in defendant's possession.

---

**3.** In its counterclaim, Puritan alleges that Kusan stopped shipping vinyl siding to Puritan on April 18, 1987. Puritan alleges that Kusan effectively terminated the agreement without the required notice, and claims damages for wrongful termination of the distributorship. Neither party has moved for summary judgment on Puritan's counterclaims. The Court therefore does not reach the issue of whether Kusan wrongfully stopped shipping products before the ninety days' notice of termination of the agreement had expired.