# Richmond.

## NEWPORT NEWS AND OLD POINT RAILWAY AND ELECTRIC COMPANY v. LAKE AND OTHERS.

### March 12, 1903.

1. DEDICATION—*Acceptance—Revocation.*—Dedication of land to a public road or street is not complete until acceptance by competent authority, and it may be revoked at any time before such acceptance or before others, upon the faith of it, have been induced so to act as to render the revocation unjust.

2. DEDICATION—*Prior Deed of Trust.*—A purchaser of land subject to a prior deed of trust which has been duly recorded cannot dedicate any portion of it to a public street to the prejudice of the creditor secured, or a purchaser under the deed of trust. Such trust creditor or purchaser under the deed of trust has the right to rely on his recorded title as notice to all the world of his rights.

3. ESTOPPEL—*Proof—Case in Judgment—Notice.*—A mere equitable estoppel constitutes no defence to an action of ejectment, and when such defence is set up in equity it must be distinctly charged and clearly proved. The evidence, in the case in judgment, does not clearly establish an estoppel. The party invoking the estoppel had actual and constructive notice of the rights of the other party, and the conduct of the latter was not such as to operate as a waiver of his rights, or estop him from asserting them.

Appeal from a decree of the Circuit Court of Elizabeth City county, pronounced February 25, 1902, in a suit in chancery, wherein appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*O'Ferrall & Register* and *S. Gordon Cumming,* for the appellant.

*Peterson & Lewis,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This is a suit in equity brought by appellant, the Newport News and Old Point Railway and Electric Company, against appellees, J. B. Lake and M. L. Lake, and others, to enjoin appellees from the prosecution of an action of ejectment instituted against appellant for the recovery of a strip or parcel of land 100 feet wide and 2,045 feet long, occupied by appellant with its roadway and track, and also damages to the amount of $7,750.03.

The sole ground of equitable jurisdiction is the allegation that appellees are estopped by their conduct from proceeding further with their action at law.

Appellees demurred to the bill, and also answered it, and in their answer denied the existence of the matters of estoppel relied on.

Depositions were taken, and at the hearing the trial court decreed a dissolution of the injunction which had been theretofore granted; and from that decree this appeal was allowed.

It appears that on the 24th day of October, 1891, appellees conveyed 171 2-3 acres of land, embracing the land in controversy, to the Newport News Company, a corporation chartered as a land company. The company paid part of the purchase price cash, and made notes for the residue, secured by a contemporaneous deed of trust on the land. For the purpose of effectuating the object of its organization, the land company had that tract, and a contiguous tract which it had purchased, surveyed, and laid out into blocks, lots, avenues, streets and alleys. But the map was not executed and acknowledged in accordance with the requirements of an act of the General Assembly, approved March 5, 1888, commonly known as "The Map Act," and it was never duly recorded. Acts 1887-'8, p. 553. The properties are situated between the town of Hamp-

ton and the city of Newport News. Among other stipulations, the trust deed provided that if sale should be made of any of the lots, upon payment to appellees of a certain portion of the price, to be credited on the deferred instalments of purchase money due them, appellees would execute release deeds to the lots so paid for to the Newport News Company.

It further appears that a written agreement was entered into between the Newport News Company and J. S. Darling—the virtual owner of an electric railway line operating between Hampton and Old Point, under the name of the Hampton and Old Point Railway Company, and also the alleged owner of a franchise authorizing the construction and operation of a railway from Hampton to Newport News, under the name of the Newport News Street Railway Company—that if the latter would construct and operate a street railway line from Hampton to Newport News through the land purchased from appellees, over and along the avenue designated "Venable Avenue," the land company would pay Darling, or the company represented by him, $2,500, and would convey to him or his company a certain number of lots of the value of $2,500. This agreement was carried out by Darling and others, acting as the Newport News Street Railway Company; but the land company neither paid the money nor conveyed the lots as stipulated in the agreement. Two or three years after the construction of the railway along Venable avenue, default having been made by the Newport News Company in payment of the deferred instalment of purchase money of the land bought of appellees, the property was sold by trustees and purchased by appellees, and conveyed to them on May 4, 1895. The lots, however, which had been previously sold by the land company and released from the lien of the deed of trust, were expressly excepted from the operation of the deed.

. By authority of an act of the General Assembly, and by resolution of the stockholders, the Hampton and Old Point Rail-

way Company and the Newport News Street Railway Company
were consolidated as the Newport News, Hampton and Old
Point Railway Company; and, in October, 1898, the properties
of the last-named company were sold to appellant.

The grounds of estoppel relied on by appellant are that its
predecessor in title, the Newport News, Hampton and Old
Point Railway Company, was induced by representations and
promises of the Newport News Company, with the knowledge
and consent of appellees, to construct its road along Venable
avenue; that by reason of the consent, either express or tacit,
of appellees to the company's track being laid along the avenue,
and their laches and neglect in not objecting to the construc-
tion and operation of the road, and the confirmation of the
plat by appellees and their trustees, evidenced by the execu-
tion and delivery of the deeds of release, expressly referring to
the map, and the execution of the deed from the trustees to
the defendants, also expressly referring to and confirming the
map, the trustees had no authority or right in law or equity to.
convey the property back to appellees, except subject to the
rights of purchasers of lots fronting on Venable avenue and the
public generally, including the rights which appellant's prede-
cessor had acquired in and upon the streets and avenues dedi-
cated to the public by the recordation of the plat or otherwise.

The bill charges "that, though defendants may be able to es-
tablish at law such title to the strip of land, known as Venable
avenue, as would enable them to recover the same against com-
plainant, nevertheless, for the reasons assigned, and by reason
of the manifold benefits and advantages to them and the ·pur-
chasers of lots as to whom the lien of the deed of trust has
been released, who were largely influenced to buy by reason of
the existence and operation of the railway, defendants are
equitably estopped from proceeding' further with the action of
ejectment; that, should defendants prevail at law, the eject-
ment of complainant from Venable avenue would work im-

measurable damage to complainant, without adequate remedy at law, and also to hundreds of workmen and the public generally, who are daily transferred on complainant's cars to and from their work in Hampton and Newport News." And the prayer is, that appellees be enjoined from further prosecuting the action of ejectment, and that the court of equity will fully determine the respective rights, titles, and interests of complainant and defendants, and the public generally to the streets, avenues and alleys laid off on the map of the Newport News Company.

It will be observed that the single issue presented by the pleadings is the matter of estoppel referred to. It will be well, therefore, to eliminate from the controversy a consideration of the alleged rights of the public, and purchasers of lots from the land company whose titles have been confirmed by release deeds from appellees. They are not parties to the suit, and their rights will not be affected by any of the proceedings therein. It is not pretended that there has been an acceptance by the pubilc of the avenues, streets and alleys laid out by the land company on its map; and the rights of owners, as to whose lots the lien of the deed of trust has been released, to the use of the avenues, is conceded.

The doctrine is succinctly stated thus: "Although there may have been a sufficient dedication of land to a public road or street, acceptance in some form by the public is necessary to establish the right in the public.

"The dedication, however, whether express or implied, may be revoked before it has been accepted by competent authority, or others have, upon the faith of it, been induced so to act as to render its revocation unjust.

"The sale of lots according to a map, vests in the purchasers the right to use the streets appearing on such map, and the right so vested cannot be defeated by the act of the vendor, because by the sale under such circumstances, he is estopped to

deny or impeach rights thus acquired. Such an estoppel, however, operates only in favor of him who has been misled to his injury, and he alone can set it up. It does not operate in favor of a city or county which has acquired no rights thereunder." *Norfolk* v. *Nottingham*, 96 Va. 34, 30 S. E. 444.

Confusion will be likewise obviated by not confounding the acts and conduct of the Newport News Company with those of appellees, for it is the settled law of this State that no collateral agreement, or unauthorized representation, made by a mortgagor can impair or prejudice the rights of a mortgagee.

"It is clear that the mortgagor cannot bind his mortgagee by any contract prejudicial to his title, and the same principle applies as between the vendee and his vendor who has reserved a lien for his purchase money." *Biggs* v. *Elliston Development Company*, 93 Va. 404, 25 S. E. 113.

"A purchaser of land subject to a prior deed of trust cannot dedicate any portion of the land to a public street or road to the prejudice of the rights of the first creditor or purchaser under the deed of trust." *Gate City* v. *Richmond*, 97 Va. 337, 33 S. E. 615. At page 339, the court says: "We are of opinion, however, that Wm. D. Jones (who was a purchaser subject to a prior deed of trust) had no power to dedicate the ground to a street. It was covered by a deed of trust securing rights prior to, and higher than, his. He was only entitled to the equity of redemption, and could not give away a part of the property any more than the whole to the prejudice of the deed of trust in subordination to which he held."

The record title of appellees was complete, and on that title they had a right to rely, and to assume that all persons who dealt with the property did so with notice of their lien, and in subordination to their rights.

It is not to be presumed that appellant's predecessor in title was ignorant of the true condition of the title of the Newport News Company, with whom it proposed to enter into an impor-

tant agreement involving $5,000 in money and land, and 2,045 feet of its roadway and track. Indeed, the evidence shows that in addition to the constructive notice afforded by the recordation of the deeds, the railway company had actual notice of appellees' rights. And with such notice, the circumstance that it treated with the land company alone justifies the conclusion that it chose to assume the risk of that company perfecting its title by paying the purchase money and discharging the lien of the deed of trust. At all events, it had notice, and cannot now visit upon appellees the consequences of its own imprudence, unless appellees were in some way responsible for the untoward conditions with which appellant is now confronted.

Coming then to the consideration of appellant's contention that appellees knew of the agreement between the Newport News Company and the Newport News, Hampton and Old Point Railway Company, for the extension of its railway over and along Venable avenue, and, with such knowledge, acquiesced in the construction and operation of the road, it appears that the allegation of the bill in that regard is explicitly denied by the answers both of appellees and the trustee, Colonel Tabb—and the denial in the answers is repeated by J. B. Lake in his deposition. The only direct countervailing evidence, if it can be so regarded, is that of S. S. Elam, secretary of the land company, who testified that Mr. Lake and himself discussed the probability of the Newport News Company fulfilling its undertaking with the railway company; but it is to be remarked that this witness did not know of the agreement himself until after it had been made, and his testimony is, therefore, not necessarily in conflict with that of Lake. There is absolutely no evidence in the record that appellees, by word or act, ever ratified the agreement. If they had adopted and confirmed the agreement, as alleged, it is not perceived why appellees are not under the same obligation to pay the money consideration and convey the lots stipulated for, as to donate a

right of way over their land; both requirements are provided for in the contract, and each occupies the same plane. Yet it is not pretended that appellees owe appellant $5,000 in money and land. It distinctly appears from the testimony of J. B. Lake that he promptly objected to the invasion of the premises by the railway company to J. S. Darling, the promoter and principal owner. He fully explained to Darling that appellees had sold the property to the land company, reserving a lien, and in case of its failure to perfect its title by payment of the purchase price, he objected to the road passing through the property without proper compensation. After giving in detail that conversation, he testified as follows: "I made every effort in order to get a settlement, and let them know how I stood all the way along from beginning to end. I failed to get any satisfaction from any of the parties. I have kept up a running fire for a settlement and satisfaction, all of which I failed to get. If I left a stone unturned, I do not know it."

He further testified that, after appellees repurchased the property, he addressed a letter to the president of the present company, informing him that the old company had taken his property without consulting him, and without his consent; that he did not wish to interfere with him, but wanted to say to him that the company had never acquired the right of way from him. In that connection he says: "Just about the time Mr. Payne (president of appellant company) was negotiating with Mr. Darling, I thought it due to Mr. Payne to let him know how the matter stood; that I had never released my right of way to the road; that I had objected from beginning to end, and there was no reason why I should not object."

The only discrepancy between the statement of this witness and that of the president of the new company in relation to the communication is as to its date; the latter testifying that it was after the sale had been consummated. Lake's evidence is strongly corroborated by that of Thomas Tabb, who says: "He

always insisted upon the fact that the road had possession of land which belonged to him, and he wanted compensation for it"; and further, that the relations between Lake and Darling were strained by reason of their difference in respect to the right of way.

Frank W. Darling, president and superintendent of the old company, and a director of the present company, testified that his agreement for a right of way along Venable avenue was wholly with the Newport News Company; that he relied upon the contract of that company for his protection, and did not think he needed a right of way from any one else; that, so far as he knows, Lake never authorized his company to go upon the land, and did nothing to induce them to do so; and that he did not look to the Lakes, but to the land company, for a right of way over the property.

In the light of this uncontradicted evidence, it would be indeed a singular perversion of the doctrine of equitable estoppel to hold that it deprives appellees—clothed with a complete legal title, and who have resorted to every means in their power, short of physical force, to prevent an invasion of their premises—of their land on the theory of *acquiescence*.

Title to real property rests upon no such unstable foundation in this Commonwealth.

As regards the title of the Lakes, the railway company was an intruder upon their premises, and, "there is no law which compels a man to protest against a wrongful entry upon his land at the peril of being held to ratify it. Both parties knew their rights. The law provides a mode in which a party seeking to obtain property for public use may do so lawfully. If such a party disregards the mode prescribed, and enters upon property without consent, it is a wrong-doer, and can acquire no right by expending money on the property. Nor does the property-owner lose any rights by mere delay." Lewis on Eminent Domain, sec. 648.

In regard to the remaining ground of estoppel, that appellees indorsed and confirmed the map and prospectus of the Newport News Company, which, it is contended, shows that an electric railway was to be constructed through the property, it is apparent that the reference in the deed of trust and deeds of release to those documents was merely in connection with a description of the released lots, furnished by the former, and the price-list contained in the latter. That will be seen from the following extract from the deed of trust: "It is covenanted between the parties hereto that at any time . . . the said trustees shall execute a release . . . of any one or more of said lots as laid down in the said plat . . . for the Newport News Company, whenever it shall appear from satisfactory evidence to said trustees . . . that the said party of the first part or its assigns shall have paid on account of the debt secured thereby . . . an amount for each of said lots so requested to be released equal to the price of said lot as laid down in the 'price-list' attached to the prospectus of the Newport News Company. . . . But nothing herein contained shall be construed to, or shall have the effect to release any part of the land hereby conveyed from the lien of this deed, except such parts as to which release shall be specifically executed hereunder."

The principles which estop a person from claiming what is conceded to be his own property are highly penal in their nature, and the authorities uniformly hold that estoppels *in pais* are not to be taken by argument or inference, but must be certain to every intent. The burden of proof rests on the party relying upon an estoppel, and it must be made to appear affirmatively by clear, precise and unequivocal evidence. *Bolling* v. *Mayor of Petersburg*, 3 Rand. 563; *Taylor* v. *Cussen*, 90 Va. 40, 43, 17 S. E. 721.

Experience has shown that in controversies involving title to real estate, it is far safer to rely on written muniments of

title than "the slippery memory of man." Hence parol defeasances in such cases are not favored—a mere equitable estoppel constitutes no defence to an action of ejectment (*Haney v. Breeden,* 100 Va. 781, 42 S. E. 916); and when such defence is set up on the equity side of the court, it must be distinctly charged and clearly proved.

Applying these principles to the evidence, it is clear that appellant has not sustained the grounds upon which the equitable jurisdiction of the court is invoked.

If there had been an acceptance of Venable avenue by the public, the questions of dedication by appellees and additional servitude, by reason of the extraordinary charter powers with which the appellant company is invested, to which so much of the argument was addressed, would have arisen. But the opinion has been designedly limited to a discussion of the case made by the pleading and evidence.

There is no error in the decree complained of, and it is affirmed.

*Affirmed.*