# Richmond

RAYMOND FITZGERALD AND OTHERS v. WILLIE FITZGERALD AND OTHERS.

June 8, 1953.

Record No. 4068.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

*L. Grafton Tucker,* for appellants.

*Robert C. Goad,* for appellees.

HUDGINS, C. J., delivered the opinion of the court.

N. D. Fitzgerald, former owner of the land involved in this cause, and the common source of title of both complainants

and respondents, was twice married. His first wife, L. Catherine Fitzgerald, died in 1905, survived by her husband and ten children. In 1907 he married his second wife, Rose Ellen Fitzgerald, who is still living. He died in 1920, survived by two sets of children, five by his last wife.

C. N. Fitzgerald, one of the ten children of N. D. Fitzgerald and his first wife, died intestate March 26, 1949, survived by his wife, M. S. Fitzgerald and eight children, Willie Fitzgerald, Clinie Fitzgerald, Leslie Fitzgerald, Loney F. Dodd, Carrie F. Fitzgerald, Maggie F. Campbell, Swannie F. Wiggins and Helen P. Mawyer. M. S. Fitzgerald died intestate March 15, 1950.

Willie Fitzgerald and his seven brothers and sisters instituted this suit against Rose Ellen Fitzgerald and her five children. Complainants alleged in their bill that they, as heirs at law and next of kin of their parents, C. N. and M. S. Fitzgerald, were the owners in fee of the land conveyed to their parents by two deeds of partition, one bearing date December 2, 1924, and the other, purporting to be a "deed of correction," bearing date January 10, 1941, whereby a tract of land containing 56 ¾ acres formerly owned by N. D. Fitzgerald was allegedly divided equally between C. N. Fitzgerald and his wife, M. S. Fitzgerald, on the one part, and Rose Ellen Fitzgerald on the other. It is stated in the first mentioned deed that the grantors "being all heirs at law of the estate of N. D. Fitzgerald and his first wife, L. C. Fitzgerald, parties of the first part," in consideration of the sum of $100 paid and secured to be paid to each, joined in the deed of general warranty for the purpose of conveying all the land to C. N. Fitzgerald and his wife, M. S. Fitzgerald, and Rose Ellen Fitzgerald. In the deed of correction it was stated that the parties intended to convey 28½ acres of the land to Rose Ellen Fitzgerald, and the other 28¼ acres to C. N. and M. S. Fitzgerald.

Complainants charged that the five children of N. D. Fitzgerald and Rose Ellen Fitzgerald claim an interest in the real estate conveyed to their parents by the two aforementioned deeds, under the terms and provisions of a deed bearing date March 3, 1911, from N. D. Fitzgerald to his second wife, Rose Ellen Fitzgerald, and that this claim constitutes a cloud upon their title. They prayed that the court construe the deed of March 3, 1911, as having conveyed a life interest in the land to

Rose Ellen Fitzgerald, with absolute power of disposal, and that since she had exercised this power by uniting in the conveyance to complainants, they be declared to be the fee simple owners in equal undivided shares of the 28¼ acres described.

Respondents' demurrer to the bill was overruled. They filed their answer, admitting the execution of the various deeds mentioned in the bill, and charged that N. D. Fitzgerald by the deed of March 3, 1911, conveyed to their mother, Rose Ellen Fitzgerald, a life estate in the land described, with the undivided remainder to the ten living children of his first marriage and the five living children of his second marriage. From a decree declaring that this deed vested in Rose Ellen Fitzgerald a life estate with absolute power of disposal, the respondents obtained this appeal.

The decision of the case turns upon a proper construction of the deed of March 3, 1911. The question is, did N. D. Fitzgerald, the grantor, convey to Rose Ellen Fitzgerald a life estate in the property with absolute power of disposal, or did he convey to her only a life estate with remainder to his children?

The pertinent parts of the deed are:

"In the State of Virginia and County of Nelson do this day with due consideration make and deed my personal and real estate to my second wife Ross Ellen Fitzgerald, this property by contract between me and my first wife L. C. Fitzgerald falls to me as I am the longest liver I do deed my personal property to Roes Ellen Fitzgerald Household farming implements live stock or money at my *deth* after any just debt I may owe be paid the rest is her own to do as she pleases with at my death in her own right, if she should be the longest liver, I also leave her the land or Real estate at my death to controle as she wishes while she lives. But at her death I direct that the land be sold and each living child by my first and al*l*so by second marrig— get equal S*hear* not one cent diff*r*ence in the children I make reserve to controle personal and Real Estate while I live I al*l*so make and reserve the right to some lots and Roads to sell while I live, the rest is my wifes at my death while she lives." * * * (Here the grantor described the lots and roads reserved by him)

"Outside of these reserves at my death all the rest of land is in my wife's charge at my death to hold while she lives this deed has been duly considered by me without malice or spite with

anyone and hope all concerned will be satisfi*de Ritten* by my own hand this the 3 day of March 1911 and signed by me.''

Grammatical errors and misspelled words appear in the deed, but the language expresses a reasonably clear intention to vest in the grantee after the death of the grantor an absolute interest in the personal property and a life interest in the real estate with remainder in his children. The language used in conveying the personal property is ''I do deed my personal property to Ro*es* Ellen Fitzgerald * * * at my death after any just debt I may owe may be paid the rest is her own to do as she pleases with at my death * * * if she should be the longest liver.'' The formation of the sentences and the words used are awkward and somewhat unusual but the meaning is clear.

The grantor did not use the same language in conveying the real estate that he did in conveying the personal property, thereby indicating that it was his purpose to convey a different interest in the two classes of property. In disposing of his real estate he used this language: ''I also leave her the land or Real estate at my death to contro*le* as she wishes while she lives. But at her death I direct that the land be sold and each living child by my first and al*l*so by second marrig— get equal *Shear* not one cent diff*r*ence in the children.'' The grantor's intention to give his wife only a life interest in the real estate is emphasized in the closing sentence of the deed which is ''Outside of these reserves at my death all the rest of land is in my wife's charge at my death to hold while she lives * * *.''

There is no language in the deed giving the wife the power of disposal either in express terms or by implication. The word ''control'' is not synonomous with the words ''dispose,'' or ''sell.'' ''Control'' means ''to exercise restraining or directing influence over; to dominate; regulate.'' Webster's International, unabridged Dictionary, Second Edition, p. 580. The Deluxe Edition of Black's Law Dictionary, p. 428, defines ''control'' as ''Power or authority to manage, direct, superintend, restrict, regulate, direct, govern, administer, or oversee.''

The grantor reserved the right to ''control'' the personal property and the real estate while he lived. He indicated that he well knew the difference between the word ''control'' and the words ''sell,'' or ''dispose of,'' as he expressly reserved the right to dispose of or sell certain described lots and roads not involved in this litigation.

The grantor's intention, as expressed in the deed, must prevail unless in conflict with some principle of law or rule of property. In ascertaining that intent the instrument should be examined as a whole and effect given to all the terms and provisions thereof. Technical rules of construction are not to be invoked to defeat the intention of the grantor when his intention appears by giving to the words used their natural and ordinary import. *Horne* v. *Horne,* 181 Va. 685, 26 S. E. 2d 80. Where there is no conflict in any of the provisions of the deed and no repugnancy results, all parts thereof should be given effect. *County School Board* v. *Dowell,* 190 Va. 676, 58 S. E. 2d 38.

■ Construing the language employed by the grantor in the deed, in the light of the authorities cited, we conclude that the grantor intended to convey to the grantee the real estate described for life and that upon her death he intended it to be sold and the proceeds divided equally amongst his living children born of his first and second marriages.

On the death of the grantor Rose Ellen Fitzgerald, owner of the life estate, became vested with the exclusive right of possession and control of the real estate in question. She had a right to sell and convey her life estate. She had no right to convey a greater interest therein. When she executed the deed of partition she conveyed her life estate in 28¼ acres of the land to C. N. and M. S. Fitzgerald, complainants' predecessors in title. The children of N. D. Fitzgerald had the right to sell and convey their undivided remainder interest in the property, whether contingent or vested. The ten children of N. D. Fitzgerald and L. Catherine Fitzgerald did convey to Rose Ellen Fitzgerald and C. N. and M. S. Fitzgerald, such interest as they had as remaindermen in the 56¾ acres. Complainants, as owners of the life estate in the 28¼ acres of land (or so much thereof as had not been alienated by their parents), have, and will continue to have, the exclusive right of possession and control until the termination of the life estate by the death of Rose Ellen Fitzgerald.

Respondents have no right of possession or control, nor do they claim such right. The possession of the life tenant, or those claiming under her, cannot be adverse to the remaindermen, because the same deed creates the two estates and the right of entry of the remaindermen does not accrue until the termination of the life estate.

■ Complainants' final contention is that respondents are estopped from asserting any rights as remaindermen.

There is no evidence tending to prove that respondents have, by word or deed, misled complainants to their prejudice or made any false representation or concealed any material fact. They acquired their interest under the same recorded deed by which complainants' predecessors in title acquired their interest. All parties knew, or had an equal opportunity of acquiring knowledge, of the true status of the title to the property.

"The principles which estop a person from claiming what is conceded to be his own property are highly penal in their nature, and the authorities uniformly hold that estoppels *in pais* are not to be taken by argument or inference, but must be certain to every intent. The burden of proof rests on the party relying upon an estoppel, and it must be made to appear affirmatively by clear, precise and unequivocal evidence * * *." *Newport News, &c. Co.* v. *Lake,* 101 Va. 334, 43 S. E. 566.

We said in *Lindsay* v. *James,* 188 Va. 646, 659, 51 S. E. 2d 326, 7 A. L. R. 2d 597: "It is essential to the application of the principles of equitable estoppel, or estoppel *in pais,* that the party claiming to have been influenced by the conduct or declarations of another to his injury, was not only ignorant of the true state of facts, but had no convenient and available means of acquiring such information, and where the facts are known to both parties, and both had the same means of ascertaining the truth, there can be no estoppel."

The facts in *Patterson's Ex'rs* v. *Patterson,* 144 Va. 113, 131 S. E. 217, upon which complainants rely to support the application of the doctrine of estoppel, are that the executors of the estate of William C. Patterson, under the mistaken belief that they were authorized to sell certain real estate belonging to the estate, sold the same at public auction, at which sale Floyd A. Patterson and Verdie P. Weast, to whom the real estate had been devised, were present. They made no objection to the sale and received their proportionate part of the purchase price. Later, and after the death of Floyd A. Patterson, his three infant children instituted a suit claiming title to the real estate in question. It was held that inasmuch as Floyd A. Patterson raised no objection to the sale and before his death had received his part of the purchase price, he would have been estopped

from asserting title to the property, which estoppel was equally applicable to his heirs and devisees.

The facts in the case under consideration are quite different from those in the Patterson case and hence the principles applied in that case are not applicable here. When, on December 2, 1924, complainants' predecessors in title purchased the property and took possession and control, respondents were not requested to execute the deed, nor could they have done so had they been so requested, as they were minors under twenty-one years of age. They neither objected to nor acquiesced in the sale, and received no part of the purchase money.

While the life tenant and the first set of children of N. D. Fitzgerald are precluded by virtue of their conveyances from asserting any rights to the real estate involved, this does not estop respondents since they do not claim interest in the land through these parties.

The fact that the life tenant attempted to convey some of the property by general warranty deed to other grantees cannot estop respondents from asserting their rights as remaindermen in the real estate involved in this cause.

The decree of the trial court is reversed and the suit dismissed.

*Reversed and dismissed.*