**Hiram PHILLIPS and Aileen B. Phillips, Plaintiffs,**

v.

**BALL AND HUNT ENTERPRISES, INC., and James Ball and Eric Enterprises, Inc., Defendants.**

Civil Action Nos. 96–0032–B, 96–0059–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

June 26, 1996.

Robert T. Copeland, Abingdon, VA, Charlie Jessee, Abingdon, VA, for Defendants.

James E. Green, Bristol, VA, for Plaintiffs.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case involves a dispute over the ownership of a number of pieces of mining equipment now in the possession of a third party. Two separate lawsuits involving the mining equipment have been filed by Hiram and Aileen Phillips ("the Phillips"). The first suit, to enforce a claimed security interest in the mining equipment, was filed against Ball and Hunt Enterprises, Inc. ("Ball and Hunt"), and James Ball. The second suit, filed against Eric Enterprises, Inc. ("Eric Enterprises"), was instituted by the Phillips to enforce their claimed right to take possession of the mining equipment. In the second suit, Eric Enterprises filed a counter-claim maintaining that it owned the mining equipment and that the Phillips' actions amounted to an abuse of process. These two suits have been consolidated into the present case. The dispositive issue in this case is whether the Phillips possess a perfected security interest in the mining equipment superior to the in-

terests of Eric Enterprises. Both the Phillips and Eric Enterprises have moved for summary judgment. The court's jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.[1]

## I. FACTS

On March 11, 1991, James Ball, on behalf of Ball and Hunt, executed a promissory note in the original principal sum of $115,400 made payable to the Phillips.[2] The note was secured by a security agreement executed the same day. This security agreement granted the Phillips a security interest in a list of specific assets belonging to Ball and Hunt, as well as in "all machinery, equipment, and fixtures now owned or hereafter acquired by Debtor, ... together with all replacements thereof, all attachments, accessories, parts, equipment and tools belonging thereto or for use in connection therewith, all substitutions, additions, accessions and the proceeds thereof." On June 20, 1991, the Phillips filed the security agreement with the clerk of Pike County, Kentucky.[3]

After the note and security agreement were signed, James Ball directed that much of the machinery and equipment subject to the security agreement be moved from Kentucky to a coal mine site in Keokee, Virginia. The parties dispute when this move actually took place. Aileen Phillips asserts that "[a]t some point after June 20, 1991, much of the collateral was moved to a mine site in Keokee, Virginia." Aileen Phillips Aff. at ¶ 6.

However, James Ball and Eric Ball[4] testified that the collateral in question was moved to Keokee during the week before June 20, 1991, and that all of the collateral was in Virginia prior to June 20, 1991. James Ball Aff. at ¶ 5; Eric Ball Aff. at ¶ 6. On April 30, 1992, the Phillips filed a UCC–1 financing statement covering the disputed collateral with the State Corporation Commission of the Commonwealth of Virginia.

On March 10, 1992, Ball and Hunt entered into an agreement[5] to sell all of its assets to Sammy Joe Enterprises, Inc. ("Sammy Joe").[6] The agreement provided as follows:

I, James C Ball, President of Ball and Hunt Enterprises do hereby agree to give Sammy Joe Enterprises all assets of Ball and Hunt Enterprises for the payment of the Matewan National Bank for the loan owed by Ball and Hunt Enterprises in which at that time the assets will be conveyed to Sammy Joe Enterprises.

Sammy Joe paid off this loan in full on February 17, 1994.

Ball and Hunt subsequently defaulted on its obligation to the Phillips. On December 12, 1994, the United States District Court for the Eastern District of Kentucky—Pikeville Division, entered an Agreed Judgment in favor of the Phillips for the amount of $52,-500 against Ball and Hunt and James Ball.

In January 1995, Sammy Joe sold the equipment which is the subject of this lawsuit to Eric Enterprises.[7] On December 12,

---

1. The Phillips are citizens of West Virginia. Ball and Hunt is a Kentucky corporation that maintained a registered office in Pike County, Kentucky. Ball and Hunt does not have its principal place of business in West Virginia. James Ball is a citizen of Virginia. Eric Enterprises is a Virginia corporation and does not have its principal place of business in West Virginia. The amount in controversy excluding interest and costs exceeds $50,000.

2. James Ball is the President of Ball and Hunt and at the times relevant to this lawsuit owned between one-half and two-thirds of Ball and Hunt. Aileen Phillips is the aunt of James Ball and owned between one-half and one-third of Ball and Hunt.

3. Kentucky law allows the secured party to file a copy of the security agreement instead of a financing statement to perfect a security interest. Ky.Rev.Stat.Ann. § 355.9–402(1).

4. Eric Ball is the sole owner of Eric Enterprises, Inc. He is the son of James Ball, and Aileen Phillips is his great aunt.

5. The agreement is dated March 10, 1991. Eric Enterprises has submitted an affidavit of James Ball in which he alleges that the "year is wrong" and that the correct date is "March, 1992". James Ball Aff. at ¶ 8. For the purposes of this opinion, the court will assume that the agreement was signed on the date James Ball alleges.

6. Sammy Joe is wholly owned by James Ball who also serves as its President.

7. The agreement providing that Sammy Joe would sell this equipment to Eric Enterprises is dated January 10, 1994, but James Ball and Eric Ball insist that the sale took place in January of 1995. James Ball Dep. at 49; Eric Ball Dep. at

1995, the Phillips filed a praecipe in this court requesting the issuance of two writs of execution, one against Ball and Hunt and the other against James Ball. Said writs were issued. On January 18, 1996, at the Phillips' request, the United States Marshall levied on a portion of the collateral located at the mine site in Keokee, Virginia.[8]

## II. SUMMARY JUDGMENT

■ In order to prevail on a motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). This court is authorized to examine materials beyond the complaint, including affidavits, depositions, answers to interrogatories, admissions, and any other material that would be admissible at trial in ruling on the motion. *Selman v. American Sports Underwriters, Inc.*, 697 F.Supp. 225, 242 (W.D.Va.1988).

The party seeking summary judgment bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied its burden, the burden then shifts to the non-moving party "to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2519, 91 L.Ed.2d 202

(1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

## III. CHOICE OF LAW

The first issue before the court is which law to apply to this multiple state transaction. Kentucky, Virginia and West Virginia, the relevant jurisdictions in this dispute, have enacted versions of the Uniform Commercial Code ("UCC"). *See* Kentucky Revised Statutes, Chap. 355.1–101 et seq.; Va. Code Ann. §§ 8.1–101 et seq.; W.Va.Code Ann. § 46–1–101 et seq. As noted by this court in the case of *Ingersoll–Rand Financial Corp. v. Nunley*, "[t]he Uniform Commercial Code generally has adopted the conflict of laws doctrine that, absent an agreement between the parties as to governing their rights and duties, the court should apply the law of the jurisdiction where material contacts are centered." 11 B.R. 528, 530–31 (W.D.Va.1981) citing U.C.C. § 1–105.

The UCC also provides specific rules governing the law to be applied in cases involving multiple state secured transactions. Official Comment 3 to U.C.C. § 9–102 explains that "[p]roblems of choice of laws to perfection of security interests and the effect of perfection or non-perfection thereof, including rules requiring reperfection, are governed by section 9–103." U.C.C. § 9–103 provides that the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected shall apply. This "last-event rule" embodied by U.C.C. § 9–103 has been called a "modified situs test" because the law of the jurisdiction where the collateral is located governs the transaction. *See generally* White & Summers, Uniform Commercial Code § 22–21 (3d Ed.1988).

---

28–9. However, O. Ross Bishop, who testified that he drafted the documents for the sale, asserted that the sale took place on January 10, 1994. Bishop Dep. at 52. For the purposes of this opinion, the court will assume that the sale occurred in January 1995. The court notes that the original agreement has never been produced. Defendants have sought to prove the existence of

the original agreement through the testimony of witnesses who claim that a certain unsigned agreement is a true copy of the allegedly executed original agreement.

8. A timeline of the events as alleged by defendants is provided in Appendix A.

■ In the present case, the last event on which is based the arguments for perfection or nonperfection is the Phillips' filing of the financing statement in Virginia. As noted, the parties are in dispute as to when the collateral was moved to Virginia. Aileen Phillips asserts that this move took place "at some point after June 20, 1991," while James and Eric Ball claim that all of the collateral had been transported to Virginia by that date. However, the precise question concerning the issue of choice of law is whether the collateral was in Virginia or Kentucky at the time the Phillips filed their financing statement in Virginia. For the purposes of this opinion, the court, construing the facts as alleged by defendants, assumes that on April 30, 1992, the collateral was in Virginia. Consequently, pursuant to U.C.C. § 9–103, Virginia law governs issues of perfection, nonperfection and reperfection in this case.[9]

## IV. THE TRANSFER OF BALL AND HUNT'S ASSETS TO SAMMY JOE

The agreement between Ball and Hunt and Sammy Joe raises the issues of when title to the assets was actually transferred and whether said transfer was authorized by the Phillips.

### A. TIME OF TRANSFER

■ Eric Enterprises asserts that Ball and Hunt transferred all of its assets to Sammy Joe in March 1992, before the Phillips filed their financing statement in Virginia. Citing Va.Code Ann. § 8.2–401, defen-dants maintain that in March 1992, title to all of Ball and Hunt's assets passed to Sammy Joe leaving Ball and Hunt with only a security interest in the assets until the loan to the Bank of Matewan was repaid. The Phillips contend that title to the assets was not transferred to Sammy Joe until February 17, 1994,—the date the loan was fully repaid—and thus argue that the date that they filed their financing statement in Virginia, April 30, 1992, is prior to the date of the transfer of assets from Ball and Hunt to Sammy Joe.

The court does not concur with Eric Enterprises' position on this issue. By its own terms § 8.2–401 does not apply to this transaction. While § 8.2–401 governs when title to goods passes to a buyer, the section provides that its rules only apply if there has not been an agreement to the contrary.[10] The agreement in question expressly provided for the time when Ball and Hunt's assets would be conveyed to Sammy Joe. The agreement specifically states, "at that time [the time Sammy Joe pays the loan owed by Ball and Hunt] the assets will be conveyed to Sammy Joe Enterprises." The language of the agreement clearly indicates that the assets are to be conveyed at a future date as evidenced by the phrases "at that time" and "will be conveyed." It is evident to the court that a condition precedent to the passing of title of Ball and Hunt's assets to Sammy Joe was that Sammy Joe fully repay the bank loan. Such loan was fully repaid on February 17, 1994, and therefore the court finds that title to Ball and Hunt's assets passed to Sammy Joe on that date.[11]

9. The court notes that the security agreement provides that upon default the "Secured Party shall have all the rights and remedies of a creditor and secured party under the laws of the State of West Virginia ..." This "choice of law" provision pertains only to the secured party's rights and remedies to recover on a debt in the case of default and clearly not to issues of perfection or nonperfection. U.C.C. § 9–103 cannot be abrogated by agreement as it exists to protect the interests of third parties.

10. Section 8.2–401(2) states:

*Unless otherwise explicitly agreed* title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading. (emphasis added).

Furthermore, Official Comment 2 to § 8.2–401 provides in pertinent part that "[t]he parties, however, have full liberty to arrange by specific terms for the passing of title to goods which are existing."

11. The court does not consider the Phillips' assertion that the transfer of assets from Ball and Hunt to Sammy Joe constituted a fraudulent conveyance. In addition, the court addresses the effect of § 8.9–306(2)—continuation of security interests—later in the opinion.

## B. AUTHORIZATION

Eric Enterprises argues that the Phillips are estopped from asserting that Ball and Hunt did not have permission to sell its assets to Sammy Joe. In support of this argument, Eric Enterprises contends that Aileen Phillips knew of the transfer and "knew that Sammy Joe had paid substantial sums on her behalf to Matawan [sic] National Bank. She never objected to the sale of the assets, she never objected to Sammy Joe paying her obligation to the bank ..." Brief in Support of Respondent's Motion to Dismiss and in Opposition to Phillips' Motion for Summary Judgment at 5. The Phillips contend that they never authorized or consented to said transfer. The Phillips further allege that they only became aware of the transfer through the March 10, 1991, agreement to sell such assets to Sammy Joe. Aileen Phillips Aff. at ¶ 2; Hiram Phillips Aff. at ¶ 2. The Phillips claim that they only became aware of this agreement on or about January 18, 1996—the date the United States Marshall levied on the equipment. *Id.*

 The facts of the case do not support an estoppel argument. "The burden of proof [for proving estoppel] rests on the party relying upon an estoppel, and it must be made to appear affirmatively by clear, precise, and unequivocal evidence." *Fitzgerald v. Fitzgerald,* 194 Va. 925, 930, 76 S.E.2d 204, 207 (1953) (quoting *Newport News, etc., Co. v. Lake,* 101 Va. 334, 343, 43 S.E. 566, 569 (1903)). Furthermore, proof of estoppel requires certainty, and thus, it is not to be established by argument or inference. *American Auto. Ins. Co. v. Fulcher,* 201 F.2d 751, 754 (1953). The mere allegations of Eric Enterprises about the Phillips' knowledge of the transfer are insufficient to sustain an argument for estoppel, and therefore, the court is unwilling to invoke the doctrine in this case.

 Nor has Eric Enterprises presented sufficient evidence to find that the transfer of assets was authorized by the Phillips. A secured party's security interest in transferred collateral is only lost where there is a clear manifestation of the secured party's intent that the collateral be transferred free and clear of its security interest. *In re Southern Properties, Inc.,* 44 B.R. 838, 843 (Bkrtcy.E.D.Va.1984). No such clear manifestation exists in this case. The security agreement specifically provided that the collateral would not be sold or transferred. There is no evidence that the Phillips expressly authorized or consented to the transfer. Consequently, the court finds that despite subsequent transfers of the collateral, the Phillips retained their security interest in the collateral in accordance with §§ 8.9–306(2) and 8.9–402(7).[12]

## V. SUFFICIENCY OF THE APRIL 30, 1992, FILING

On April 30, 1992, the Phillips filed a U.C.C.–1 financing statement covering the disputed collateral with the State Corporation Commission in Richmond, Virginia. Defendants argue that this filing is not effective to perfect the Phillips' security interest for three reasons. First, all defendants assert that Ball and Hunt had a place of business in Virginia, thereby necessitating the filing of a financing statement in the county or city where such place of business is located pursuant to Va.Code Ann. § 8.9–401(1)(c). Such local filing was not made. Secondly, Eric Enterprises maintains that even if Ball and Hunt did not have a place of business in Virginia, the Phillips are still required to file in the county or city where the collateral is located to perfect their security interest. Lastly, Eric Enterprises argues that the Phillips failed to take timely action after the collateral was removed from Kentucky to Virginia and that therefore, their security interest is ineffective against Eric Enterpris-

---

12. Section 8.9–306(2) provides that a secured party's security interest continues in collateral regardless of sale, exchange or other disposition unless the secured party has authorized the disposition.

Section 8.9–402(7) provides that a secured party need not file a new financing statement to maintain a perfected security interest in collateral transferred by the debtor.

PEB Commentary No. 3, dated March 10, 1990, further explains the interplay between these two sections.

es. The Phillips contend that because Ball and Hunt had no place of business in Virginia, the filing of a financing statement with the State Corporation Commission is all that is required to perfect their security interest under the UCC as enacted in Virginia.

## A. WHETHER BALL AND HUNT HAD A PLACE OF BUSINESS IN VIRGINIA

■ Ball and Hunt is a Kentucky corporation with its registered office in Pikeville, Kentucky. It has never been authorized to do business in Virginia. James Ball testified to Ball and Hunt's history in his deposition with the relevant portion as follows:

Q. Mr. Copeland was asking you about when Ball and Hunt ceased doing business. Did you say it ceased doing business in 1990?

A. In '91 I guess it was.

Q. In 1991?

A. I don't remember the dates, but ——. I can go back and get them, but I don't remember what date it was.

Q. So Ball and Hunt didn't move with you over to Keokee?

A. No, Ball and Hunt didn't move with me over to Keokee.

Q. Did Ball and Hunt ever do business in Virginia?

A. No.

Q. It never had a place of business in Virginia?

A. No, sir.

James Ball Dep. at 91. Some time after this deposition, James Ball submitted an affidavit that contradicted the above-stated sworn testimony. In this subsequent affidavit, James Ball stated, "Ball & Hunt did transact business in Virginia by the sale of this equipment to Sammy Joe Enterprises, Inc., but it never qualified to do business in Virginia, but did have a place of business solely in Keokee (Lee County), Virginia." [13]

The facts fail to demonstrate as a matter of law that Ball and Hunt had a place of

business in Virginia. Defendants assert that the moving of the collateral to Keokee, Virginia, coupled with the creditors' knowledge that the collateral was in Virginia, established a place of business in Keokee, Virginia for Ball and Hunt. The court finds that even if these facts are true, they are not sufficient to establish a place of business.

The UCC does not define "place of business". Determining what constitutes a place of business is a factual determination entailing a case by case approach. *In re Yale Mining Corp.*, 39 B.R. 201, 203 (Bkrtcy. W.D.Va.1984). The court in *Yale Mining* summarized the various tests which have been employed to determine whether a place of business exists as follows:

Several tests have been used in making the factual finding of what constitutes a place of business. One such test measures the quantity of work accomplished at a particular place; another focuses on "notoriety"; that is, the extent to which creditors and others know that the debtor does business at the location in question. A third test considers whether the debtor actually conducts manufacturing and commercial activities in a particular place.

*Id.*

This court finds no evidence to conclude that Ball and Hunt had a place of business in Virginia under any of the above-mentioned tests. There is no evidence indicating that Ball and Hunt ever engaged in any work or performed any commercial activities from the Keokee, Virginia location. Thus, defendants fail to satisfy either the first or third cited tests. Furthermore, sufficient evidence has not been presented to raise a question of fact under the "notoriety" test. The notoriety test focuses on the extent that creditors and others know that the debtor in fact was doing business at the place in question. *See generally* White & Summers, Uniform Commercial Code § 22–21 (3d ed. 1988). In the present case, James Ball alleges that the only creditors of Ball and Hunt were the Phillips and the Bank of Matewan and that these creditors knew that the equipment was

---

**13.** The court does not consider whether the submission of this subsequent affidavit was merely an attempt to create a sham issue of fact as

described in the line of cases beginning with *Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir. 1984).

in Virginia.[14] However, the test requires that creditors know that the debtor is in fact *conducting business* from a certain location. The creditors' knowledge that a debtor merely has assets located at a particular site is insufficient to establish a place of business. Therefore, the court finds that Ball and Hunt never had a place of business in Virginia.

■ In addition, the court is of the opinion that the proper time to inquire whether the debtor had a place of business at a particular location is at the time the security interest attaches. This view has been adopted by the Second Circuit in *In re Knapp,* 575 F.2d 341 (2d Cir.1978). In *Knapp,* the Second Circuit stated that "solid policy considerations" support the view that the debtor's place(s) of business should be determined at the time the security interest attaches. *Id.* at 344. Policy considerations noted by the *Knapp* court included the observations that creditors perform credit checks and verify important facts such as residence, at the time the security interest attaches. *Id.* This court agrees with the Second Circuit's reasoning and also that of *Amvest Funding Co. v. Rex Group, Inc.,* 80 B.R. 774, 781 (Bkrtcy.E.D.Va.1987) which held that the proper time to classify collateral for the purpose of determining where a financing statement should be filed, is at the time that the security interest attaches. Because creditors obtain the necessary information for filing a financing statement on or before the time the security interest attaches, this court holds that the determination of the debtor's place of business for legal purposes should be made at this same time. In the present case, the Phillips' security interest attached when James Ball signed the security agreement on behalf of Ball and Hunt on March 11, 1991, at which time Ball and Hunt clearly did not have a place of business in Virginia.

## B. THE PROPER PLACE TO FILE THE FINANCING STATEMENT

■ Section 8.9–401(1) governs the place(s) a creditor must file in order to per-fect a security interest. Under § 8.9–401(1), the place(s) a creditor must file is determined by the classification of the collateral and also by the location of the debtor. Section 8.9–401(1)(a) only pertains to filings "[w]hen the collateral is equipment used in farming operations, or farm products, or accounts or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods ..." Section 8.9–401(1)(b) only concerns filings "[w]hen the collateral is timber to be cut or is minerals or the like ... or accounts subject to subsection (5) of § 8.9–103, or when the financing statement is filed as a fixture filing ... and the collateral is goods which are or are to become fixtures ..." Section 8.9–401(1)(c) is the relevant section for this case and provides as follows:

> In all other cases, in the office of the State Corporation Commission and in addition, if the debtor has a place of business in only one county or city of this Commonwealth, also in the office of the clerk of the court in which deeds are admitted to record of such county or city, or, if the debtor has no place of business in this Commonwealth, but resides in the Commonwealth, also in the office of such clerk of the county or city in which he resides;

In the present case, the collateral involved is mining equipment and the debtor has no place of business in the Commonwealth of Virginia. Furthermore, Ball and Hunt is not a resident of Virginia as determined by § 8.9–401(5)(c).[15] Consequently, the court is confronted with a situation involving mining equipment and a debtor who does not have a place of business in Virginia and who also is not a resident. This situation falls within the coverage of the catch-all phrase—"in all other cases"—of § 8.9–401(1)(c). Accordingly, the proper place to file is with the State Corporation Commission. Thus, the Phillips took all of the necessary steps to perfect their security interest under Virginia law and therefore, possess a validly perfected security interest in the mining equipment.

---

**14.** The number of creditors and the knowledge that these creditors possessed are issues of fact strongly contested by the Phillips.

**15.** Section 8.9–401(5)(c) provides that "a foreign corporation having no registered office in Virginia shall be deemed a nonresident."

## C. EFFECT OF THE COLLATERAL'S REMOVAL ON THE SECURITY INTEREST

Eric Enterprises characterizes § 8.9–103(1)(d) as providing that "a security agreement shall remain effective for a four month period following the removal of goods from one jurisdiction to another", and that since the Phillips did not perfect their security interest in Virginia within four months of removal, their security interest is ineffective against a subsequent purchaser such as Eric Enterprises. Brief in Support of Respondents' Motion to Dismiss and in Opposition to Phillips' Motion for Summary Judgment at 4–5. This characterization misconstrues § 8.9–103(1)(d).

Section 8.9–103(1)(d) provides as follows:

When collateral is brought into and kept in this Commonwealth while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Part 3 (§ 8.9–301 et seq.) [16] of this title to perfect the security interest,

(i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this Commonwealth, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal;

(ii) if the action is taken before the expiration of the period specified in (i) of this paragraph, the security interest continues perfected thereafter;

 Eric Enterprises argues that if a party fails to perfect a security interest within four months in the jurisdiction to which the collateral has been removed (the "destination state"), then the security interest remains forever unperfected.[17] The court does not construe § 8.9–103(1) as reaching this result. Even if the Phillips had a perfected security interest in the collateral as a result of the Kentucky filing, the fact that four months have passed since the collateral was moved from Kentucky to Virginia does not operate as a permanent bar to the Phillips' reperfection of their security interest. The four month period described in § 8.9–103(1) simply operates as a "grace period" in which a secured party automatically maintains a perfected security in the collateral after removal. If the secured party does not reperfect its security interest in the destination state within the four month period (or before the expiration of the period of perfection in the original jurisdiction), then the security interest becomes unperfected, and the secured party's interest in the collateral potentially becomes subordinate to the interests of a subsequent purchaser or another secured party. However, the secured party is free to reperfect its security interest in the destination state after the four month period. In such a case perfection dates from the time of perfection in the destination state and thus does not relate back to the time of perfection in the original state. Thus the secured party runs the risk that the collateral has been transferred during the period between the four month period and reperfection, or that

---

**16.** Part 3 of Article Nine generally requires the secured party either to refile in the jurisdiction to which the collateral was removed or to take possession of the collateral in order to continue the perfection of the security interest after removal. White & Summers, Uniform Commercial Code § 22–21 (3d Ed.1988).

**17.** The court is also of the opinion that § 8.9–103(1)(d) does not apply. The court previously stated in this summary judgment motion that it has construed the facts in defendants' favor and that for the purposes of this opinion it will assume the facts alleged by defendants are true. The court has assumed that the collateral was removed to Virginia before June 20, 1991,—the

date the Phillips filed in Kentucky. As noted in the court's discussion concerning choice of law, because the collateral is assumed to have been located in Virginia on June 20, Virginia law applies to this situation. Virginia law requires that the Phillips file in Virginia to perfect their security interest. Thus, the Kentucky filing was insufficient to perfect the Phillips' security interest at that time. Since § 8.9–103(1)(d) only applies to collateral "subject to a security interest *perfected under the law of the jurisdiction from which the collateral was removed*" (emphasis added), it is inapplicable to the present situation. *See also* White & Summers, Uniform Commercial Code § 22–21 (3d Ed.1988).

another secured party has a perfected security interest in the collateral. In such cases the secured party's interests will be subordinate to the interests of the subsequent purchaser and other secured party. To interpret § 8.9–103(1) as Eric Enterprises suggests, would be inconsistent with the basic structure of the UCC as it concerns perfection.[18] Therefore, the court concludes that if—the Phillips perfected their security interest in Kentucky and that thereafter the collateral was removed to Virginia, and that more than four months passed after removal and filing with the State Corporation Commission—then the Phillips are not precluded from reperfecting their security interest in Virginia.

Consequently, the court is simply confronted with the issue of whether the Phillips perfected their security interest in Virginia before the collateral was sold to Sammy Joe. The court has already determined that the Phillips' action of filing a financing statement with the State Corporation Commission satisfied the statutory requirements for perfection. Such perfection took place before Ball and Hunt sold the collateral to Sammy Joe. Thus, the Phillips have a perfected security interest in the collateral superior to the interests of Eric Enterprises.

### D. EFFECT OF THE AGREED JUDGMENT ON THE SECURITY INTEREST

The final issue the court must address is what effect, if any, the Agreed Judgment has on the Phillips' perfected security interest. The possibility that the Phillips are barred from asserting rights under the security agreement because of the Agreed Judgment has been brought to the court's attention. The court finds no such bar exists to the Phillips' pursuit of such rights.

■■■ The security agreement provides that upon default the "Secured Party shall

have all the rights and remedies of a creditor and secured party under the laws of the State of West Virginia ..." The court notes that § 9–501 of the UCC governing default has been adopted by Virginia and West Virginia in identical versions. These sections provide as follows:

> When a debtor is in default under the security agreement, a secured party has the rights and remedies provided in this part ... He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure ... The rights and remedies referred to in this subsection are cumulative.

Va.Code § 8.9–501(1); W.Va.Code § 46–9–501(1).

Section 9–501(1) leaves little doubt that the secured party is not barred by any doctrines such as merger or res judicata from asserting rights under the security agreement after a judgment has been obtained. Section 9–501(1) specifically declares that the rights and remedies are "cumulative". Precluding the secured party from pursuing more than one remedy to satisfy the debt would render the statutory language meaningless. Furthermore, Official Comment 6 states:

> Under subsection (1) a secured party is entitled to reduce his claim to judgment or to foreclose his interest by any available procedure, outside this Article, which state law may allow. The first sentence of subsection (5)[19] makes clear that any judgment lien which the secured party may acquire against the collateral is, so to say, a continuation of his original interest (if perfected) and not the acquisition of a new interest or a transfer of property to satisfy an antecedent debt.

Courts that have considered this issue overwhelmingly agree that a secured party may pursue more than one remedy. *Gla-*

---

18. The consequences of the four month period of U.C.C. § 9–103 as they pertain to perfection are explained further by White & Summers, Uniform Commercial Code § 22–21 (3d Ed.1988).

19. This sentence reads:
 When a secured party has reduced his claim to judgment the lien of any levy which may be

made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral.
Va.Code § 8.9–501(5); W.Va.Code § 46–9–501(5).

*morgan Coal Corp. v. Bowen,* 742 F.Supp. 308, 309 (W.D.Va.1990) ("Courts have had little difficulty determining that the language of [§ 9–501] creates a creditor's right to seek more than one type of relief."); *Hill v. Bank of Colorado,* 648 F.2d 1282 (10th Cir.1981) (bank did not lose enforceable security interest in collateral after obtaining a personal judgment against debtor); *State Bank of Piper City v. A–Way, Inc.,* 115 Ill.2d 401, 105 Ill.Dec. 452, 504 N.E.2d 737 (1987) (merger of notes into judgment against debtor or doctrine of res judicata does not preclude a secured creditor's action to enforce its security interest); *Ceres Fertilizer, Inc. v. Beekman,* 209 Neb. 447, 308 N.W.2d 347 (1981) (recovery of judgment for debt, except to extent that it has been satisfied, does not prevent later proceedings to enforce security interest under UCC); *Ruidoso State Bank v. Garcia,* 92 N.M. 288, 587 P.2d 435 (1978) (where bank first sued on debt and obtained default judgment against debtors, its security interest did not merge into such judgment so as to preclude later suit).

This court knows of only one case holding that a secured party is precluded from enforcing its security interest after obtaining a judgment on a debtor. That case is *In re Wilson,* 390 F.Supp. 1121 (D.Kan.1975). However, *Wilson* has been heavily criticized and even courts within the same jurisdiction have declined to follow it. *See Bank of Oklahoma v. Fidelity State Bank and Trust Co.,* 623 F.Supp. 479, 485 (D.Kan.1985) ("The UCC clearly preserves for a secured creditor a variety of resources after default, in addition to those otherwise available through judicial process …"). This court rejects *Wilson* as well and holds that the Phillips are not precluded from pursuing rights under the security agreement.

Pursuant to the security agreement, the Phillips ask for reasonable attorney's fees and legal expenses incurred by them in retaking, holding, preparing for sale, selling or other disposition of the collateral other than expenses incurred in obtaining the Agreed Judgment. The security agreement provides:

In addition to those expenses expressly authorized by the laws of the State of West Virginia, Secured Party shall be entitled to reasonable attorney's fees and legal expenses incurred in retaking, holding, preparing for sale, selling or other disposition of, the Collateral. All such expenses shall be part of the obligation secured by the Security Agreement.

The court finds that the Phillips are entitled to attorney's fees and expenses under the security agreement and therefore they are awarded said fees and costs.

## VI. CONCLUSION

Because the Phillips perfected their security interest in the collateral, they have a security interest that takes priority over the interests of Eric Enterprises. Therefore, the Phillips' motion for summary judgment is GRANTED and Eric Enterprises' motion is DENIED. The court also makes the following findings:

That any existing or future lien of the Marshall's levy on the collateral pursuant to a writ of execution to enforce the Agreed Judgment shall have priority over any interest of Eric Enterprises in the collateral; and

That in addition to the sums owing on the Agreed Judgment, the lien of the Marshall's levy on the collateral pursuant to a writ of execution to enforce the Agreed Judgment shall secure all reasonable attorney's fees and legal expenses incurred by plaintiffs in retaking, holding, preparing for sale, selling or other disposition of, the collateral.

The Clerk is directed to send a copy of this Memorandum Opinion to the counsel of record.

## APPENDIX A

### TIMELINE OF EVENTS [20]

March 11, 1991: James Ball, on behalf of Ball and Hunt, executes the promissory note and also signs the security agreement.

---

20. As noted in footnote 8 some facts in this timeline are disputed by the Phillips. These facts have been construed as defendants have alleged them to be.

June 13–19, 1991: The collateral is moved from Kentucky to Keokee, Virginia.

June 20, 1991: The Phillips file the security agreement in Kentucky.

March 1992: Ball and Hunt executes the agreement to sell assets to Sammy Joe.

April 30, 1992: The Phillips file the financing statement in Virginia.

February 17, 1994: Ball and Hunt's debt to the Bank of Matewan is paid in full by Sammy Joe.

December 12, 1994: The United States District Court for the Eastern District of Kentucky enters an Agreed Judgment in favor of the Phillips.

January 1995: Sammy Joe sells the collateral to Eric Enterprises.

January 18, 1996: The United States Marshall levies on a portion of the collateral located in Keokee, Virginia.